Eric M. Schiffer (SBN 179695)
Leslie F. Vandale (SBN 238823)
SCHIFFER & BUUS, APC
4675 MacArthur Court, Suite 590
Newport Beach, California 92660
Telephone:   (949)825-6140
Facsimile:    (949)825-6141
Email:        eschiffer@schifferbuus.com

Attorneys for Defendant-In-Intervention
TRANSUNION TITLE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CV 09-06487 JHN VBKx |
| Plaintiffs, | Assigned Judge: Hon. Jacqueline H. Nguyen |
| vs. | |
| 718 WEST WILSON AVENUE, GLENDALE, CALIFORNIA 91203; LOT 17 of TRACT NO. 4531, IN THE COUNTY OF LOS ANGELES, CALIFORNIA, AS PER MAP RECORDED AT BOOK 52, PAGE 18 OF PARCEL MAPS, OFFICE OF THE COUNTY RECORDER; AND HOVSEP BOGHOSSIAN, | Complaint Filed: 9/30/09 Complaint In Intervention Filed: 1/28/10 |
| | Trial: June 7, 2011 |
| | **DEFENDANT IN INTERVENTION TRANSUNION TITLE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| Defendants. | |
| | **[Filed concurrently herewith Memorandum of Points and Authorities; Separate Statement of Uncontroverted Facts and Contentions of Law in Support thereof; Declaration of TransUnion; [Proposed] Order]** |
| U.S. BANK, NATIONAL ASSN, | **DATE:         March 7, 2011** |
| Plaintiffs In Intervention, | **TIME:          10:00 a.m.** |
| | **COURTROOM: 790** |
| vs. | |
| HOVSEP DERBOGHOSSIAN (aka | |

1
TRANSUNION TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

HOVSEP BOGHOSSIAN), an
individual, REMY MAZMANIAN, an
individual, NATIONS TITLE
COMPANY OF CALIFORNIA,
REGENCY ESTATE PROPERTIES,
INC., a California Corporation,
TRANSUNION TITLE INSURANCE
COMPANY and DOES 1 through 100,
Inclusive,

                    Defendants In
Intervention

_____

**TO THE HONORABLE COURT, TO PLAINTIFF-IN-INTERVENTION**

**AND ITS ATTORNEYS OF RECORD AND OTHER PARTIES IN**

**INTEREST:**

**PLEASE TAKE NOTICE** that on **March 7, 2011**, at 10:00 am**.,** or soon

thereafter as the matter may be heard in Courtroom 790 of the above-entitled Court

located at 255 East Temple Street, Los Angeles, California, before the Honorable

Jacqueline Nguyen, United States District Judge, Defendant-In-Intervention

TRANSUNION TITLE INSURANCE COMPANY ("TransUnion") will and

hereby does move the Court, pursuant to Rule 56(b), (c) and (d) of the *Federal*

*Rules of Civil Procedure*, for an Order granting summary judgment, or in the

alternative, partial summary judgment in favor of TRANSUNION and against

Plaintiff-In-Intervention, U.S. BANK, N.A. ("U.S. Bank") on the ground no trial

issue as to any material fact exists and TransUnion is entitled to judgment as a

matter of law.

This motion is brought on the following grounds:

1.  U.S. Bank's Sixth Cause of Action for Negligence fails on the grounds that

no triable issue of material facts exists, as U.S. Bank cannot establish that

TransUnion owes it any duty or breached any duty and cannot establish that its

damages were caused by any breach of duty by TransUnion.

2.  U.S. Bank's Seventh Cause of Action for Breach of Contract fails on the

TRANSUNION TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

grounds that no triable issue of material fact exists, as U.S. Bank cannot establish the existence of a contract between U.S. Bank and TransUnion and cannot establish damages arising from the breach of any contract with TransUnion.

3.  U.S.  Bank's Eighth Cause of Action for Fraud fails on the grounds that no triable issue of material facts exists, as U.S. Bank cannot establish intent to defraud by TransUnion.

4.  U.S. Bank's Ninth Cause of Action for Conspiracy to Defraud fails on the grounds that no triable issue of material facts exists, as U.S. Bank cannot establish TransUnion's knowledge of or agreement with the object and course of another's wrongdoing.

This Motion is made following TransUnion's efforts to meet and confer pursuant to Local Rule 7-3 on January 24, 2011.  *See* Declaration of Leslie F. Vandale, ¶ 8 .

This Motion will be based on this Notice, the attached Memorandum of Points and Authorities filed and served concurrently, all pleadings and papers on file herein, the Separate Statement of Uncontroverted Material Facts, the Declarations of Eric M. Schiffer, Leslie F. Vandale and Dawn Weller and the evidence attached thereto and upon such oral and documentary evidence as may be presented at the hearing on this Motion.

DATED:  February 4, 2011            SCHIFFER & BUUS, APC


                                    By:_____/s/ *Leslie F.Vandale*____
                                        Eric Schiffer
                                        Leslie Vandale
                                    Attorneys for Defendant-In-Intervention
                                    TRANSUNION TITLE INSURANCE
                                    COMPANY

TRANSUNION TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.   INTRODUCTION………………………………………………………………...1

II.  STATEMENT OF FACTS…………………………………………………..4

    A.  Origination of the Subject Loan……………………………………………4

    B.  Subject Loan Closing………………………………………………………6

    C.  Post-Funding Default and Investigation………………………………...8

III. LEGAL STANDARD ………………………………………………………9

IV. LEGAL ARGUMENT…………………………………………………...10

    A.  TRANSUNION IS ENTITLED TO SUMMARY JUDGMENT AS TO U.S.
        BANK'S EIGHTH AND NINTH CAUSES OF ACTION BECAUSE THERE IS
        NO EVIDENCE OF INTENT TO SUPPORT ANY FINDING OF FRAUD OR
        CONSPIRACY TO DEFRAUD……….………………………………...10

        1.  U.S. Bank's Fraud Claim Fails Because There is No Evidence of Intentional
            Conduct or Any representation by TransUnion…………………….…10

        2.  U.S. Bank's Conspiracy to Defraud Claim Fails Because There Is No
            evidence of TransUnion's Knowledge of, Or Agreement With, Any wrongful
            Conduct……………………………………………………………11

    B.  NO AGENCY RELATIONSHIP AROSE BY VIRTUE OF THE FRAUDULENT
        JUNE 16, PRELIMINARY REPORT……………………………….……..12

        1.  No Actual Authority Existed Regarding the June 16, 2008 Preliminary
            Report……………………………………………………………….…12

        2.  No ostensible Authority Existed Regarding the June 16, 2008 Preliminary
            Report………………………………………………………...……13

        3.  TransUnion Never Ratified The Issuance of the June 16, 2008 Preliminary
            Report or Any Conduct Related to It…………………………...………14

    C.  TRANSUNION IS ENTITLED TO SUMMARY JUDGMENT AS TO U.S.
        BANK'S SIXTH CAUSE OF ACTION FOR
        NEGLIGENCE…………………………………………………...……15

i

# TABLE OF CONTENTS

Page

1.  U.S. Bank's Negligence Claim Must Fail Since It Cannot Satisfy the Element of Causation……………………………………………………………16

2.  Transunion Owed No Duty to U.S. Bank by Virtue of the Issuance of the Preliminary Title Report…………………………………………..…………18

3.  U.S. Bank's Negligence Claim Must Fail Because The Issuance of TransUnion's Title Policy Is Not In Breach of Any Duty……………….…20

D.  TRANSUNION IS ENTITLED TO SUMMARY JUDGMENT AS TO U.S. BANK'S SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT………………………………………………………………..…21

1.  U.S. Bank's Claim for Breach of Contract Fails Because No Mutual Assent Existed as to a Material Term, Such that No Contract Existed……………..21

2.  U.S. Bank's Claim for Breach of Contract Fails Because TransUnion is Not the Cause of U.S. Bank's Alleged Damages………………………………23

V.  CONCLUSION……………………………………………………………..24

## <u>TABLE OF AUTHORITIES</u>

Page

**CASES**

*Acoustics, Inc. v. Trepte Const. Co.,* 14 Cal. App. 3d 887, 916 (1971)……………………..…….21

*Alexander v. Codemasters Group Limited,* 104 Cal.App.4th 129, 141 (2002)…………..………21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)……………………………….……...9

*Ann M. v. Pacific Plaza Shopping Center,* 6 Cal. 4th 666, 673 (1993)………………….……...15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)……………………………….……..4, 8

*Cicone v. URS Corp.,* 183 Cal.App.3d 194, 200 (1986)……………………………………....….9

*Ernst v. Searle,* 218 Cal. 233, 238 (1933)……………………………………………………....12

*Fidelity National Title Ins. Co. v. Miller,* 215 Cal.App. 3d 1663, 1175 (1989). ……………....18

*Gordon v. Havasu Palms,* 93 Cal.App. 4th 244, 251 (2001)…………………………………….15

*Hartlong v. Partake*, 266 Cal. App.2d 942, 960 (1968)……………………………………….13

*Hill v. Citizens Nat. Trust & Savings Bank of Los Angeles*, 9 Cal.2d 172, 175-176 (1937)…12, 13

*Mills v. U.S. Bank,* 166 Cal.App.4th 871, 899 (2008)………………………………………....16

*Ladd v. County of San Mateo,* 12 Cal.4th 913, 917 (1996)……………………………………..15

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)……...9

*Mitchell v. Gonzales*, 54 Cal.3d 1041, 1049 (1991)……………………………………………..16

*Okun v. Sup.Ct.* 29 C3d 442, 454 (1981)……………………………………………………...10

*Queliman Co., Inc. v. Stewart Title Guar. Co.* 19 C4th 26, 47, 77 (1998)………………………10

*Richert v. General Ins. Co.*68 Cal. 2d 822, 830 (1968)……………………………………..21,22

*Robinson Wilson, Inc. v. Stone,* 35 Cal.App.3d 396, 407 (1973)…………………………....21

*Southland Title Corporation v. Superior Court,* 231 Cal. App. 3d 530, 536-537 (1991)……….18

*Soifer v. Chicago Title Company*, 187 Cal.App.4th 365, 374 (2010)……………………………18

*St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines,* 101 Cal.App.4th 1038, 1061 (2002)……………………………………………………………………………………22

*Wolschlager v. Fidelity National Title Insurance Company,* 111 Cal.App.4th 784, 790 (2003)...21

**STATUTES**

California Civil Code § 2300……………………………………………………………………13

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

California Civil Code § 2307.................................................................................12, 14

California Civil Code § 2310.........................................................................................14

California Civil Code § 1550...........................................................................................21

California Civil Code § 1565...........................................................................................21

California Insurance Code § 12340.11...........................................................................18

F. R. Civ. P. 56(b)........................................................................................................2,8

F. R. Civ. P. 56(c)....................................................................................................2,4, 8

F. R. Civ. P. 56(e)..........................................................................................................9

F. R. Civ. P. 30(b)(6)....................................................................................................10

**OTHERS**

1 Witkin, *Summary of Cal. Law*, Contracts § 117, p. 116 (10th ed. 2005)...........................21

1 Witkin *Summary of Cal. Law,* Contracts, § 870, p. 956 (10th ed.2005) ........................22

1 Witkin *Summary of Cal. Law*, Contracts, § 915, p. 1012 (10th ed.2005) ........................22

3 Witkin, *Summary of Cal. Law*, Agency § 133, p. 177 (10th ed. 2005)............................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The main action arising under this court's jurisdiction is a CERCLA claim by the United States against the borrower, Hovsep Derbogthossian ("Derboghossian"), as well as the real property located at 718 W. Wilson Ave., Glendale, CA 91203 ("the Subject Property").  Plaintiff-In-Intervention U.S. BANK, N.A. ("U.S. Bank") thereafter filed a complaint-in-intervention related to that main action asserting claims for relief arising from a commercial SBA loan in the amount of $1,313,200.00 it funded to Derboghossian with regard to the purchase of the Subject Property ("the Subject Loan").  In its complaint-in-intervention, U.S. Bank alleges four causes of action against Defendant-In-Intervention TRANSUNION TITLE INSURANCE COMPANY ("TransUnion") for Negligence, Breach of Contract, Fraud and Conspiracy to Defraud.  By virtue of these claims, U.S. Bank seeks to recover for its alleged losses as a result of the funding of the Subject Loan.

At issue in U.S. Bank's complaint-in-intervention are the contents of two preliminary title reports; one of which was a genuine report issued by NATIONS TITLE COMPANY OF CALIFORNIA  ("Nations Title") as agent for TransUnion on or about May 7, 2008 ("the May report"), and one of which was a fabricated report dated June 16, 2008 ("the June report"), which was neither issued by Nations Title or TransUnion, nor even known by those entities to exist prior to the funding of the Subject Loan.  In the May report, the existence of a lien by the Environmental Protection Agency ("EPA Lien") which encumbered the Subject Property was disclosed (as item number thirteen on Schedule B of the report) to U.S. Bank and was known by U.S. Bank to exist prior to the funding of the Subject Loan.  Yet the undisputed facts show that U.S. Bank did nothing to investigate the basis for the existence of the EPA Lien; that is to say, the potential environmental condition affecting the Subject Property that may have given rise to the EPA Lien

in the first place.  In fact, U.S. Bank's business development officer in charge of originating the Subject Loan as new business for U.S. Bank (and new commissions for himself), Craig Bittner, specifically knew about the EPA Lien, yet never disclosed the EPA Lien to U.S. Bank's underwriters or processors, nor forwarded the May report for review.  Instead, he allowed the seller in the transaction, Remy Mazmanian, to address the EPA Lien.  Thereafter, the fraudulent June report materialized, and purported to remove the EPA Lien from the chain of title.

Immediately prior to funding, Nations Title contacted U.S. Bank to finalize the exceptions to title set forth in Schedule B of the May report, and specifically asked whether U.S. Bank desired to fund the Subject Loan subject to the disclosed EPA Lien, which, in fact, had not been removed from the chain of title.  U.S. Bank's inexperienced loan processor responded in the affirmative.  As a result, the EPA Lien was excluded from coverage under the resulting title insurance policy issued by TransUnion.

Although U.S. Bank claims it has suffered harm because its deed of trust is not in first position (rather, it is subject to the disclosed EPA Lien), the undisputed facts show that the environmental conditions which existed at the Subject Property could have (and should have) been discovered pre-funding, such that U.S. Bank could have opted not to fund the Subject Loan.   More importantly, neither Nations Title nor TransUnion caused the environmental conditions that existed at the Subject Property, and specifically disclosed the existence of the EPA Lien prior to funding.  U.S. Bank admits that, contrary to SBA guidelines, it took no action to investigate the basis for the existence of the EPA Lien, nor did its business development officer even disclose the EPA lien to the U.S. Bank underwriter.  Instead, U.S. Bank's business development officer relied upon the seller, who appears to have orchestrated the fraudulent removal of the EPA Lien by virtue of the June report and related documents, including a falsified Phase I environmental report.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

Following a first payment default on the Subject Loan, as well as the discovery of fraudulent conduct separate and apart from any environmental or title issues, U.S. Bank found itself unwilling to foreclose on the Subject Property (not wanting to become responsible for the environmental issues that did in fact exist at the Subject Property).  Instead, U.S. Bank filed this lawsuit in an attempt to recover its alleged losses from, among others, TransUnion.  The undisputed material facts demonstrate, however, that none of the falsified documents discovered in connection with the Subject Loan were prepared, presented or communicated by Nations Title or TransUnion.  In fact, there is no evidence of wrongdoing by Nations Title or TransUnion in this case.

U.S Bank's claims of fraud and conspiracy to defraud are therefore completely lacking in merit as against TransUnion, as there is absolutely no evidence of either a misrepresentation by TransUnion or any intentional conduct by TransUnion.  In addition, neither the fabricated June report, nor any lender's instructions which reference that fraudulent report, give rise to any agency relationship between Nations Title and TransUnion, since the June report was not an authorized underwriting product as required by virtue of the Underwriting Agreement between Nations Title and TransUnion.  Moreover, U.S. Bank's negligence claim fails, as U.S. Bank's purported damages were caused by the existence of environmental conditions (which U.S. Bank failed to investigate pre-funding),  as well as the fraud surrounding the Subject Loan which ultimately led to the borrower's first-payment default, and not by TransUnion.  The negligence claim also fails because TransUnion does not owe U.S. Bank any duty in connection with the issuance of a preliminary title report or closing instructions.  Finally, U.S. Bank's breach of contract claim fails because the undisputed facts demonstrate that no contract existed between U.S. Bank and TransUnion, nor were there any resulting damages attributable to any alleged breach by TransUnion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

Summary judgment or partial summary judgment is proper pursuant to Rule 56(c) of the Federal Rules of Civil Procedure because there are no triable issues of material facts relating to U.S. Bank's claims. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986) (the principal purpose of Rule 56(c) is to isolate and dispose of factually-unsupported claims or defenses). Here, U.S. Bank is not entitled to recovery on any of its claims against TransUnion and judgment should be entered in favor of TransUnion.

## II.   STATEMENT OF FACTS

### A. <u>Origination of the Subject Loan</u>

This action arises from the June 2008 origination of a commercial SBA loan in the principal amount of $1,313,200.00 ("Subject Loan") by lender U.S. Bank, N.A. ("U.S. Bank") and the subsequent default by borrower Hovsep Derboghossian . (Undisputed Material Fact ("UMF")[1] Nos. 1, 3). Derboghossian sought to obtain financing for his purchase of the Subject Property from seller Remy Mazmanian. (UMF Nos. 1,3). In addition to the borrower and seller, the origination of the Subject Loan also involved an escrow company (Regency Escrow), title company, Nations Title, and title insurance underwriter, TransUnion. Craig Bittner was the business development officer for U.S. Bank who coordinated the origination of the Subject Loan. (UMF Nos. 1,3- 5). The final title insurance policy was issued by TransUnion Title Insurance Company ("TransUnion") (UMF No. 45). Nations Title was authorized to act as TransUnion's agent for specific authorized title insurance transactions, pursuant to an Underwriting Agreement. (UMF No. 8).

During the origination of the Subject Loan, Nations Title, pursuant to the Underwriting Agreement with TransUnion, issued the May report, which disclosed

---

[1] Undisputed Material Facts are set forth in U.S. Bank's Separate Statement of Uncontroverted Material Facts and Conclusions of Law in Support of Motion for Summary Judgment filed concurrently with this brief.

the existence of the EPA Lien encumbering the Subject Property.  (UMF Nos. 6-8).
Craig Bittner received the May report and provided it to the appraiser, Irwin
Wakcher.  (UMF No. 9).  The appraiser noticed the EPA Lien disclosed on the
May report (listed as Item 13 on Schedule B, which identifies exceptions to
coverage) and brought it to Bittner's attention in an email dated Friday, June 13,
2008 at 5:01 p.m.:

> Item #13 on the title report indicates a lien by the EPA.  Further
> explanation is required.  thanks.  Irwin

To which Bittner replies on Friday, June 13, 2008 at 5:09 p.m.:

> I see what you are referring to and will get an explanation on Monday
> from Title.  Sorry, we must have missed it.  Thank you, Craig B
> (UMF Nos. 9,10, 11).

Bittner failed to share this information with U.S. Bank's credit department or the
loan closing department. (UMF Nos. 20, 22, 28).   Instead, the following Monday,
June 16, 2008, the fabricated June report was received by Bittner.  (UMF No. 12).
Schedule B of the June report removed the EPA Lien, and in its place, Item 13 is
listed as a "Statement of Information" (previously listed as Item 14 on the May
report).  (UMF No. 14).  However, Nations Title did not issue or have any
knowledge of the June report, and the June report was not an approved
underwriting product.  (UMF No. 13).

In addition to advising Bittner about the EPA Lien, the appraiser
recommended a Phase I Environmental Site Assessment, and Bittner agreed to
order one.  (UMF No. 15).  Rather than ordering the Phase I through U.S. Bank, as
is U.S. Bank's normal procedure, however, Bittner allowed the seller to take care
of it. (UMF Nos. 16, 17).  Bittner then provided the purported Phase I to the
appraiser but did not include it in his file to U.S. Bank's underwriter, Dennis
Brown ("Brown"), or discuss it with Brown.  (UMF Nos. 22, 23).  Brown testified

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

that had he known of the existence of the EPA Lien or any environmental issues, he would have been concerned and alerted his manager. (UMF No. 21).  Brown initially declined to approve the Subject Loan based upon the borrower's business having insufficient profitability, but his decision was overruled by a senior credit manager, and the Subject Loan was approved. (UMF No. 19).

### B. <u>Subject Loan Closing</u>

The information about the environmental contamination, which triggered the EPA Lien, existed prior to funding and could have been discovered prior to funding.  (UMF No. 26).  However, nothing was done by U.S. Bank to investigate the environmental issues giving rise to the EPA Lien prior to funding.  (UMF No. 27).  Despite Craig Bittner's knowledge of the May report and EPA Lien (and his disclosure of the environmental issues to Derboghossian), U.S. Bank's closing department had no knowledge of the May report.  (UMF Nos. 18, 28).

When U.S. Bank's closing department sent its Lender's Instructions to escrow, they made reference to the June report.  (UMF No. 29).  Nations Title, on the other hand, did not issue or have any knowledge of the purported June report, and as such, its actions in issuing a final title policy were based upon its review of the only known preliminary title report: the May report; as well as its email communications with U.S. Bank approving the transaction to close subject to the EPA Lien. (UMF Nos. 13,30, 33-36).

Prior to the loan closing, on June 26, 2008, Nations Title contacted U.S. Bank's loan closing department to confirm that U.S. Bank was approving Item 13 on the preliminary title report to remain as an exception to coverage (the EPA Lien, which was the only known item number thirteen to Nations Title). (UMF No. 33).  This exception was confirmed in email correspondence by loan processor Lisa Long of U.S. Bank, which amended the Lender's Instructions to escrow. (UMF Nos. 35-36)  However, Long did not understand what she was being asked. (UMF No. 34).  More senior U.S Bank loan processors believed that Long, who

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

had been under constant supervision since becoming a loan processor, lacked any basic understanding of loan processing.  (UMF No. 32).  In fact, Long did not have any understanding of Schedule B of a preliminary title report.  (UMF No. 31). Long did not copy her supervisors on her email correspondence with Nations Title, as she was directed to do, which was one of the bases for her ultimate demotion from her position as a loan closer. (UMF No. 34).

Nations Title also received information from escrow indicating that both the buyer and the seller knew about and approved the EPA lien, and agreeing that it would be excepted from coverage under the title insurance policy.  (UMF No. 38). Prior to funding, the title officer at Nations Title understood that the parties were going to close the Subject Loan transaction with the EPA lien as an exception. (UMF No. 38).

After Nations Title received the amended instructions to title (the email from Long approving Item 13 as an exception to coverage), TransUnion issued a final title insurance policy, which did in fact list the EPA Lien as an exception to coverage. (UMF No. 45).  TransUnion's exception of the EPA lien in the final title policy was appropriate based upon the information received from Nations Title. (UMF No. 46).  TransUnion never had any contact with U.S. Bank about the loan and never made any representations to U.S. Bank prior to funding. (UMF Nos. 47-48)  Moreover, TransUnion was not aware of, nor did it ratify, any alleged representations or wrongdoing by Nations Title. (UMF No. 52)

## C. <u>Post-Funding Default and Investigation</u>

After funding, Derboghossian failed to make the first payment or any subsequent payments on the Subject Loan.  (UMF No. 39). U.S. Bank's special asset group conducted an investigation, during which U.S. Bank discovered numerous misrepresentations in the loan origination documents, unrelated to any environmental issues with the Subject Property.  (UMF No. 40).  Additionally, during the post-funding investigation of the Subject Loan, U.S. Bank discovered a

Phase I report in Bittner's file (which apparently had not been forwarded to U.S. Bank's underwriting or closing department), contacted the author of the report and confirmed that it was falsified and not prepared in connection with the Subject Property.  (UMF Nos. 23, 25).

U.S. Bank made a claim to the Small Business Administration ("SBA") for payment on the SBA guaranty, but the claim was denied due to a missing title policy and later, due to the environmental problems on the Subject Property. (UMF No. 42, 43).  U.S. Bank admitted, however, that even if it were in first lien position and there were no environmental issues, the SBA would nevertheless deny a guaranty claim because of the fraud findings related to the loan origination. (UMF No. 44).  U.S. Bank charged off the Subject Loan, rather than foreclose, because of the existing environmental issues, as U.S. Bank does not want to become the owner of record, subject to CERCLA liability. (UMF No. 41).

U. S. Bank is unaware of, and there is no evidence of, any wrongdoing by TransUnion in connection with the Subject Loan.  (UMF Nos. 49-52).

## III.   LEGAL STANDARD

A party against whom a claim is asserted may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof. *Fed. R. Civ. Proc.* 56(b). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. Proc.* 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324(1986). However, the moving party has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. *Id.* The moving party need only point out to the

Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting *Fed. R. Civ. Proc.* 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Id.* at 249-250.

## IV. <u>LEGAL ARGUMENT</u>

### A. <u>TRANSUNION IS ENTITLED TO SUMMARY JUDGMENT AS TO U.S. BANK'S EIGHTH AND NINTH CAUSES OF ACTION BECAUSE THERE IS NO EVIDENCE OF INTENT TO SUPPORT ANY FINDING OF FRAUD OR CONSPIRACY TO DEFRAUD</u>

#### 1. <u>U.S. Bank's Fraud Claim Fails Because There is No Evidence of Intentional Conduct or Any Representation by TransUnion</u>

To prevail in a cause of action for fraud, the plaintiff must establish the following elements: (1) defendant's misrepresentation; (2) defendant's knowledge of falsity; (3) defendant's intent to defraud; (4) justifiable reliance on the part of plaintiff; and (5) resulting damage. *Cicone v. URS Corp.*, 183 Cal.App.3d 194, 200 (1986). In the present action, there is absolutely no evidence of wrongdoing, let alone intent to defraud, by TransUnion. While U.S. Bank's post-funding investigation of the Subject Loan revealed that fraudulent information was provided by the borrower to secure the Subject Loan, the information and documents came from Regency Escrow, the seller and the borrower through Craig

9

Bittner to U.S. Bank.  (UMF Nos. 3-5, 25,40).  No representations were ever made by TransUnion to U.S. Bank in connection with the Subject Loan. (UMF Nos. 47, 48, 52).  In fact, U.S. Bank admitted it had no communication with TransUnion prior to funding, and U.S. Bank's expert was unable to point to any improper conduct by TransUnion, and notably, no intentional conduct by TransUnion. (UMF. Nos. 47, 52).  The lack of evidence of any wrongdoing by TransUnion was established by the deposition testimony of  Leslie Boyer, U.S. Bank's Compliance Officer and corporate designee pursuant to *Federal Rule of Civil Procedure*, Rule 30(b)(6):

> **Q**: To your knowledge, does U.S. Bank have any evidence that TransUnion had anything to do with the June [16] Preliminary Report?
>
> **A**:  No, except that its name is on the document. (87:25-88:4)

Absent evidence of a misrepresentation or any intentional conduct whatsoever by TransUnion, U.S. Bank's fraud claim necessarily fails.

## 2. <u>U.S. Bank's Conspiracy to Defraud Claim Fails Because There Is No Evidence of TransUnion's Knowledge Of, Or Agreement With, Any Wrongful Conduct</u>

Similarly, U.S. Bank's claim for conspiracy to defraud also fails, because based on the undisputed material facts, U.S. Bank cannot demonstrate a conspiracy on the part of TransUnion.  Conspiracy itself is not a separate cause of action. *Okun v. Sup.Ct.* 29 C3d 442, 454 (1981).   Rather, it is a theory of vicarious liability under which certain defendants may be held liable for torts committed by others.  *Id*. To render a defendant liable for wrongs committed by another, plaintiffs must allege (1) defendant has knowledge or and agreed to both the objective and course of action to injure the plaintiff; (2) a wrongful act pursuant to such agreement; and (3) resulting harm to the plaintiff.  *Queliman Co., Inc. v. Stewart Title Guar. Co.* 19 C4th 26, 47, 77 (1998).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

U.S. Bank's conspiracy claim appears to be an attempt to reach TransUnion by linking it with the wrongdoing of other defendants.  The undisputed facts, however, demonstrate that there is no evidence that TransUnion conspired with other defendants to commit fraud.  (UMF Nos. 47-52)  As discussed above, it is undisputed that TransUnion had no involvement in the communication of any information to U.S. Bank prior to the funding of the Subject Loan. (UMF Nos. 3-5, 25, 40, 47-52).  Furthermore, there is no evidence that TransUnion had any knowledge of or agreed to any objective or any course of action with any other party to injure U.S. Bank.  (UMF No. 30, 47-52).  In fact, it is undisputed that TransUnion was involved in the Subject Loan transaction by virtue of its Underwriting Agreement with Nations Title and nothing more.  (UMF Nos. 6-7).  Accordingly, U.S. Bank cannot establish the existence of a conspiracy between TransUnion and any other defendant.

In the absence of a finding of intent or conspiracy by TransUnion, U.S. Bank's fraud-based claims must fail and summary judgment on the eighth and ninth causes of action in favor of TransUnion is appropriate.

## B. NO AGENCY RELATIONSHIP AROSE BY VIRTUE OF THE FRAUDULENT JUNE 16, PRELIMINARY REPORT

In the present action, the crux of U.S Bank's claims against TransUnion appears to be its allegation that Nations Title failed to adhere to the Lender's Instructions to Escrow, which referenced the purported June report and led to U.S. Bank being in a junior lien position.  U.S. Bank presumably seeks to recover from TransUnion on the grounds that Nations Title was TransUnion's agent.  This theory of liability fails, however, because the June report was not an authorized product, and thus, outside the scope of the agency relationship. (UMF Nos. 6-7, 13, 30, 51).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1. **No Actual Authority Existed Regarding the June 16, 2008 Preliminary Report**

No liability is incurred by the principal for acts of the agent beyond the scope of the agent's actual or ostensible authority, and a third party who deals with an agent and knows of the agency is under a duty to ascertain its scope. Thus, if the agent acts beyond his or her actual authority, and the conduct of the principal has not been such as to give the agent ostensible authority, the principal may not be held liable. *Ernst v. Searle,* 218 Cal. 233, 238 (1933); *Hill v. Citizens Nat. Trust & Savings Bank of Los Angeles* 9 Cal.2d 172, 175-176 (1937);  3 Witkin, *Summary of Cal. Law*, § 133, p. 177 (10th ed. 2005).

The relationship between Nations Title and TransUnion is governed by an express contract. (UMF No. 7).  Pursuant to the Underwriting Agreement, Nations Title is authorized to act as TransUnion's agent for a specific title insurance transaction as long as the transaction involves an "authorized underwriting product."  (UMF No. 7).  Indeed, the May report issued by Nations Title specifically disclosed the agency relationship between Nations Title and TransUnion.  (UMF No. 6).   It is also undisputed that the May report was an authorized underwriting product.  (UMF No. 6).

The fraudulent June report, however, was not an authorized underwriting product, and therefore outside the scope of any agency agreement between Nations Title and TransUnion.   (UMF Nos. 6-7, 13, 30, 51).  California *Civil Code* § 2307.

2. **No Ostensible Authority Existed Regarding the June 16, 2008 Preliminary Report**

U.S. Bank's claims also fail as against TransUnion because there is no basis to impose ostensible agency in this case.  In *Hill v. Citizens Nat. Trust & Savings Bank of Los Angeles*, the California Supreme Court evaluated the circumstances required for a finding of ostensible agency and specifically recognized that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

> [i]t is elementary that there are three requirements necessary before recovery may be had against a principal for the act of an ostensible agent.  The person dealing with the agent must do so with the belief in the agent's authority, and this belief must be a reasonable one; such belief must be generated by some act or neglect of the principal sought to be charged; and the third person in relying on the agent's apparent authority must not be guilty of negligence. 9 Cal.2d at176; California *Civil Code* § 2300.

Furthermore, ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the third party to believe the agency exists.  *Hartlong v. Partake*, 266 Cal. App.2d 942, 960 (1968).

Nations Title's conduct related to the Lender's Instructions to Escrow cannot be imputed to TransUnion on an ostensible agency basis for two reasons.  First, there is absolutely no evidence that TransUnion knew of or authorized the June report. (In fact, it is undisputed that Nations Title did not even know of or prepare it.)  (UMF Nos. 13; 30, 47).  Furthermore, TransUnion never made any representations or even communicated with U.S. Bank about the Subject Loan at any time prior to funding. (UMF Nos. 47, 48).   Thus, it is undisputed that there was no act or neglect <u>by TransUnion</u> which could have generated any belief that Nations Title was acting as its agent with respect to the June report.  (UMF Nos. 47-52).

Additionally, the undisputed facts clearly demonstrate a failure to exercise reasonable care by U.S. Bank in the closing of the Subject Loan.  U.S. Bank has admitted its knowledge of the May report and EPA lien and has admitted its failure to investigate the basis for the lien prior to funding.  (UMF Nos. 5, 8-11, 16-17, 20-23, 26-27). U.S. Bank has also admitted its loan processor lacked sufficient knowledge and understanding of loan closing procedures, including preliminary title reports.  (UMF Nos. 31, 32, 34).  As such, the third requirement for ostensible authority is not satisfied.  *Hill, supra,* 9 Cal.2d at 176; *Hartlong*, supra, 266 Cal.

App.2d at 960.

**3.   <u>TransUnion Never Ratified The Issuance of the June 16,</u>**
**<u>2008 Preliminary Report or Any Conduct Related to It</u>**

Lastly, the purported wrongdoing by Nations Title cannot be imputed to TransUnion, because TransUnion never ratified any conduct related to the fraudulent June report.  California *Civil Code* §§ 2307; 2310.  As discussed above, neither TransUnion nor Nations Title had knowledge of the fraudulent June report.  (UMF Nos. 13, 30, 36, 38, 47-50).  Neither TransUnion nor Nations Title prepared or sent the fraudulent June report and these facts are undisputed.  (UMF Nos. 6, 7, 12, 30).  U.S. Bank has admitted that it has no evidence of wrongdoing by TransUnion or Nations Title.  (UMF Nos. 49-50, 52).  There is likewise no evidence of any act or communication by TransUnion which could be construed as a ratification of any improper conduct by an agent of TransUnion.  (UMF Nos. 47, 48).  California *Civil Code* § 2310.   Accordingly, to the extent U.S. Bank's claims are aimed at TransUnion on the basis of its principal-agent relationship with Nations Title, those claims necessarily fail, and summary judgment in favor of TransUnion is appropriate.

**4.   <u>TRANSUNION IS ENTITLED TO SUMMARY</u>**
**<u>JUDGMENT AS TO U.S. BANK'S SIXTH CAUSE OF</u>**
**<u>ACTION FOR NEGLIGENCE</u>**

U.S. Bank appears to allege that the May report issued by Nations Title, as agent for TransUnion, disclosed the existence of the EPA Lien, but that the subsequent fraudulent June report, which neither Nations Title nor TransUnion issued, let alone even knew about, removed the EPA Lien.  U.S. Bank then issued lender's instructions to escrow which referenced the fraudulent June report.  The implication is that the removal of the EPA Lien between one preliminary report and the next breached a duty of care thereby imposing negligence on TransUnion.  Not only do the facts belie any such liability by TransUnion, but California law

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

specifically holds to the contrary.

To recover for negligence, the plaintiff must show the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a cause in fact of the plaintiff's injuries. *Ann M. v. Pacific Plaza Shopping Center*, 6 Cal. 4th 666, 673 (1993).  See also *Ladd v. County of San Mateo,* 12 Cal.4th 913, 917 (1996) (noting that the defendant's failure must be the proximate or legal cause of the resulting injury). In the present action, the undisputed material facts demonstrate that TransUnion neither owed a duty to U.S. Bank nor caused U.S. Bank's damages, and as such, TransUnion is entitled to summary judgment.

## 1.  U.S. Bank's Negligence Claim Must Fail Since It Cannot Satisfy the Element of Causation

U.S. Bank has admitted that the existence of the EPA lien was disclosed to it prior to the funding of the subject loan. (UMF Nos. 5, 8-11). U.S. Bank has also admitted that it failed to do any type of investigation into the basis for the EPA Lien (i.e. the existence of the environmental conditions affecting the subject property ) even though it could have, that it failed to comply with SBA's Standards of Procedure pertaining to environmental concerns, and that the environmental issues that existed at the subject property prior to funding were <u>not</u> caused by TransUnion.  (UMF Nos. 16-17, 23, 26, 27).   In light of these admissions, U.S. Bank cannot satisfy the element of causation needed to pursue a claim for negligence against TransUnion.

It is axiomatic under California law that it is necessary to show that the defendant's alleged negligence contributed in some way to the plaintiff's injury, so that "but for" the defendant's negligence, the injury would not have been sustained. Stated differently, if the incident would have happened anyway, whether the defendant was negligent or not, then his or her negligence was not a cause in fact, and cannot be the legal cause. *Gordon v. Havasu Palms*, 93 Cal.App. 4th 244, 251

(2001).  In *Mills v. U.S. Bank*, 166 Cal.App.4th 871, 899 (2008), the court found that a bank's negligence in accepting for deposit checks, written by investors without endorsement by the payee entity, was not the substantial factor in causing the investment loss.  The court found that the harm would have occurred even if the bank had not been negligent in accepting checks without endorsement because the principals would have supplied the endorsement if the bank had refused to deposit the checks.  As such, a defendant's conduct is a cause in fact of the plaintiff's injury if it was a substantial factor in bringing about the injury.  *Mitchell v. Gonzales*, 54 Cal.3d 1041, 1049 (1991).  However, if the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries.  *Id.* at 1052.

Here, the conduct that has injured U.S. Bank is the existence of environmental problems at the subject property, and not the fact that U.S. Bank's deed of trust is junior to the EPA lien.  In fact, U.S. Bank has admitted that the environmental issue was not caused by TransUnion and that it could have (and should have) investigated those issues pre-funding.  The following deposition testimony from Leslie Boyer is illustrative:

> **Q**:  It's not U.S. Bank's position that either Nations Title or Transunion caused the environmental issue at the property, correct?
> **A**:  Correct. (139:13-16)
>
>              . . .
>
> **Q**:  Again, getting back to this EPA lien disclosed which you indicated earlier was a fairly rare occurrence in your experience, shouldn't that have triggered a more in depth investigation by U.S. Bank?
> **A**: Yes.
> **Q**: And to your knowledge, one wasn't done, correct?

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

**A**:  Correct.   (98:15-21)

What's more, U.S. Bank's investigation also revealed that the subject loan had several other indicia of fraudulent conduct surrounding the borrower and the seller, all of which had nothing to do with the lien priority of its deed of trust. (UMF No. 40).  U.S. Bank even admitted that the SBA guaranty would be denied on those grounds alone. (UMF Nos. 42-44).

As such, U.S. Bank can make no showing that anything TransUnion did or did not do vis-à-vis either the May report, or the fraudulent June report was a substantial factor in causing its alleged harm.[2]  Unlike a situation where the EPA Lien was not disclosed in advance of funding, here it is undisputed that the EPA Lien was fully disclosed to U.S. Bank, but not investigated. (UMF Nos. 5, 8, 27). In fact, Craig Bittner, U.S. Bank's employee who knew about the EPA Lien prior to funding, admitted that his only concern was removing the lien, rather than researching the basis upon which it had been recorded in the first place.  (UMF No. 11, 15-16).  U.S. Bank had all the information it needed prior to funding, but chose to withhold that information from its own credit underwriting department, to allow the seller to "resolve" the lien (contrary to bank protocol), and then after the fact, to claim that Nations Title and TransUnion failed to take notice of a reference to a fraudulent June report in the lender's instructions to escrow. (UMF Nos. 20, 22, 25, 28).  U.S. Bank cannot voluntarily allow the environmental conditions to go uninvestigated, and concurrently blame TransUnion for the environmental issues currently involved with the subject property.

In the absence of a finding of causation, U.S. Bank's negligence claim must fail and summary judgment in favor of TransUnion is appropriate.

---

[2] It should be noted that U.S. Bank has opted not to foreclose on the subject property due to the environmental concerns, which calls into question whether it has adequately mitigated its losses.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

2. **TransUnion Owed No Duty to U.S. Bank by Virtue of the Issuance of the Preliminary Title Report**

It is undisputed that the only preliminary report Nations Title ever issued, and the only preliminary report TransUnion ever knew about, was the May report. Not only did the May report disclose the existence of an EPA Lien to U.S. Bank, but it offered to bind a title insurance policy which reflected that disclosure.

The California Legislature has defined the roles of preliminary reports, and has specifically codified that no duty exists by virtue of a preliminary report as to the condition of the state of title.  Distinguishing a preliminary title report from an abstract of title, California *Insurance Code* § 12340.11 states that "any such report shall not be construed as, nor constitute, a representation as to the condition of title to real property, but shall constitute a statement of the terms and conditions upon which the insurer is willing to issue its title policy, if such offer is accepted."  See also *Southland Title Corporation v. Superior Court*, 231 Cal. App. 3d 530, 536-537 (1991) (Noting that a preliminary report, for which little or no charge is made, is merely the inducement to purchase a title policy. It will no longer be treated or considered to have the legal consequence of an abstract of title.).  Unlike an abstract of title, a preliminary report only reflects the terms under which the insurer is willing to issue a policy of title insurance. The terms and conditions under which the policy of insurance may be issued may or may not reflect the true condition of record title. The insurer may choose to ignore or omit a possible exception to title based on an underwriting decision.  As such, any title search or examination is performed by the insurer solely for the purpose of seeking to evaluate its underwriting decision in issuing the policy, not for the benefit of the insured. *Fidelity National Title Ins. Co. v. Miller*, 215 Cal.App. 3d 1663, 1175 (1989).  See also *Soifer v. Chicago Title Company*, 187 Cal.App.4th 365, 374 (2010)( noting that a preliminary report, for which little or no charge is made, is merely the inducement to purchase a title policy).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

Since U.S. Bank's claim of negligence is derived from the issuance of the May report and its apparent reference to the fabricated June report, its claim must fail.

### 3.  U.S. Bank's Negligence Claim Must Fail Because The Issuance of TransUnion's Title Policy Is Not In Breach of Any Duty

Alternatively, U.S. Bank appears to allege that the failure to issue a final title policy based upon the Lender's Instructions to Escrow (which referenced the June report) was a breach of duty.  In other words, U.S. Bank claims that by virtue of its reference to the fraudulent June report in those instructions, which altered the actual May report by removing the true item number thirteen (the EPA Lien) and replacing it with a false item number thirteen (a Statement of Information), TransUnion failed to issue a policy which put U.S. Bank's lien in first position. This theory of negligence, however, is without merit, as the undisputed facts demonstrate that the Lender's Instructions to Escrow were amended and properly followed.

As a preliminary matter, TransUnion does not owe a duty of care to U.S. Bank simply by virtue of the Lender's Instructions to Escrow, which reference a preliminary title report.  Even assuming a duty existed, the issuance of the final title insurance policy excepting the EPA Lien from coverage does not constitute a breach of duty, because the Lender's Instructions to Escrow were amended and all parties were aware of the EPA Lien. (UMF Nos. 29-31, 33-36).

It is undisputed that U.S. Bank received the May report which disclosed the existence of an EPA Lien.  (UMF Nos. 5, 8).  It is also undisputed that Nations Title did not prepare and or have any knowledge of a June report. (UMF No. 13, 29, 30).  Upon receipt of the Lender's Instructions to Escrow, Nations Title contacted U.S. Bank to confirm its approval of the EPA Lien as an exception to coverage, and U.S. Bank approved it. (UMF Nos. 33-35).  Finally, Nations Title was informed that both the buyer and the seller were aware of and approved the

EPA Lien as an exception to coverage. (UMF No. 38).  Thus, TransUnion's final title policy, which includes the EPA Lien as an exception to coverage, was appropriate based on all information presented to Nations Title.  (UMF No. 30, 33-35, 38, 45, 46).  The only negligence involved in the issuance of the title policy was U.S. Bank's own failures to communicate and investigate the known existence of the EPA Lien prior to funding.  (UMF Nos. 20-22, 25-27, 28).  Based upon these undisputed facts, U.S. Bank cannot establish any breach of duty by Nations Title or TransUnion, and as such, its negligence claim fails.

As set forth above, the facts are undisputed that TransUnion did not cause U.S. Bank's claimed damages and did not owe or breach any duty of care in the issuance of its final title insurance policy to U.S. Bank.  Accordingly, TransUnion is entitled to summary judgment on the negligence cause of action.

## 5. TRANSUNION IS ENTITLED TO SUMMARY JUDGMENT AS TO U.S. BANK'S SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT

### 1. U.S. Bank's Claim for Breach of Contract Fails Because No Mutual Assent Existed as to a Material Term, Such that No Contract Existed

U.S. Bank's breach of contract claim against TransUnion appears to arise from the Lender's Instructions to Escrow dated June 17, 2008.  Specifically, U.S. Bank claims that by virtue of its reference to the fraudulent June report in those instructions, which altered the actual May report by removing the true item number thirteen (the EPA Lien) and replacing it with a false item number thirteen (a Statement of Information), TransUnion failed to issue a policy which put U.S. Bank's lien in first position.  U.S. Bank's own evidence, however, supports a finding that there was no contract that existed since the item number thirteen Nations Title referred to was materially different from the item number thirteen

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

U.S. Bank claims to have referred to, thereby resulting in no mutual assent, and therefore no contract.

The essential elements of a cause of action for breach of contract include (1) the existence of a contract, (2) Plaintiff's performance or excuse for non-performance, (3) Defendants' breach, and (4) the resulting damages. *Richert v. General Ins. Co.* 68 Cal. 2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Const. Co.*, 14 Cal. App. 3d 887, 916 (1971). Here, undisputed evidence shows that no contract existed, such that TransUnion has not breached any contract.

Mutual assent is necessary to the formation of a contract. See California *Civil Code* §§1550 and 1565. The manifestation of mutual assent is generally achieved through the process of offer and acceptance. 1 Witkin, *Summary of Cal. Law,* Contracts §117, p. 116 (10th ed. 2005). Mutual assent necessary to the formation of a contract is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings. *Alexander v. Codemasters Group Limited*, 104 Cal.App.4th 129, 141 (2002). Whether a certain or undisputed state of facts establishes a contract is a question of law for the court. *Robinson Wilson, Inc. v. Stone*, 35 Cal.App.3d 396, 407 (1973).

In the context of a preliminary title report issued in advance of a title insurance policy, the process of obtaining title insurance contemplates the receipt of a title report before the close of escrow, setting forth the conditions upon which the insurer is willing to issue its title policy. The insured's approval and acceptance of the conditions set forth in the preliminary report create a binding contract based on the terms set forth in the report and any materials that are incorporated by reference. *Wolschlager v. Fidelity National Title Insurance Company*, 111 Cal.App.4th 784, 790 (2003).

At best, the undisputed facts show a fundamental misunderstanding as to which preliminary reports were being referenced in the lender's instructions. The

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

email chain between Nations Title and U.S. Bank clearly refers to item number thirteen on the May report. (UMF No. 33, 37).  The lender's instructions seem, however, to refer to the fabricated June report, which Nations Title never even knew was in existence.  (UMF No. 29). Therefore, if U.S. Bank is correct in stating that it was referencing a Statement of Information as item number thirteen, and not the EPA Lien as item number thirteen, U.S. Bank (the insured) did not approve and accept the conditions set forth in the preliminary report, which therefore failed to create a binding contract.  *Wolschlager, supra* 111 Cal.App.4[th] at 790 .  It therefore follows that if the parties were not in agreement as to whether the EPA Lien was to be excepted from coverage, then there was no contract in existence, such that TransUnion could not have breached any contract.

## 2. U.S. Bank's Claim for Breach of Contract Fails Because TransUnion is Not the Cause of U.S. Bank's Alleged Damages

An essential element of any breach of contract claim is damages.  *Richert v. General Ins. Co.*68 Cal. 2d at 830.   However, "[u]nder contract principles, the non-breaching party is entitled to recover only those damages . . . which are 'proximately caused' by the specific breach."  *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines*, 101 Cal.App.4th 1038, 1061 (2002).   "It is essential to establish a causal connection between the breach and the damages sought." 1 Witkin *Summary of Cal. Law* Contracts, § 870, p. 956 (10th ed.2005); see also California *Civ.Code*, § 3300.  Moreover, plaintiff cannot recover for harm it could have foreseen and avoided by reasonable effort and without undue expense.  1 Witkin *Summary of Cal. Law*, Contracts , § 915, p. 1012 (10th ed.2005).  Here, U.S. Bank's breach of contract claim fails because the undisputed facts demonstrate that its damages were not caused by the breach of any agreement between it and TransUnion and because U.S. Bank could have foreseen and avoided its claimed damages.

U.S. Bank has admitted that the existence of the EPA Lien was disclosed to

22

it prior to the funding of the Subject Loan. (UMF Nos. 5, 8).  U.S. Bank has also admitted that it failed to do any type of investigation into the basis for the existence of the environmental conditions affecting the subject property (even though it could have), that it failed to comply with SBA's Standards of Procedure pertaining to environmental concerns, and that the environmental issues that existed at the subject property prior to funding were <u>not</u> caused by TransUnion.  (UMF Nos. 16-17, 23, 26, 27).  In light of these admissions, U.S. Bank cannot establish a causal connection between its damages and the purported breach of a contract with TransUnion, and thus, its breach of contract claim is without merit.  These undisputed facts also establish that U.S. Bank could have foreseen damages from the existence of a senior lien and the failure to investigate and prevent the damages it has sustained.  Accordingly, as a matter of law, U.S. Bank is not entitled to recover any of its purported damages from TransUnion.

### V.     <u>CONCLUSION</u>

U.S. Bank knew about the existence of the EPA Lien encumbering the Subject Property and failed to investigate the basis for that Lien.  U.S. Bank's employee failed to notify his own underwriter about the potential environmental conditions that existed at the Subject Property, and allowed the seller to remedy the EPA Lien issue, contrary to U.S. Bank protocol.  The June report was a fraudulent document never issued or even known about by either TransUnion or Nations Title.  The Subject Loan was rife with fraudulent information and disclosures, notwithstanding the environmental issues at the Subject Property.  U.S. Bank's decision to fund the Subject Loan was its own choice, based upon information available to it (or otherwise withheld by its employee, and other third parties).  TransUnion should not be held liable for that conduct when it is undisputed that TransUnion did nothing wrong.

For all of those reasons, TransUnion respectfully requests the Court grant this Motion in its entirety.  Alternatively, if the Court determines that summary

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT

1  judgment is inappropriate, TransUnion requests the Court grant partial summary

2  judgment as to those claims where there are no genuine issues of material fact.

3  DATED:  February 4, 2011                    SCHIFFER & BUUS, APC

4

5                                                    By:_____/s/ Leslie F. Vandale_____

6                                                          Eric Schiffer
                                                            Leslie Vandale

7                                                    Attorneys for Defendant-In-Intervention

8                                                    TRANSUNION TITLE INSURANCE
                                                      COMPANY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT