PETER J. SALMON (SBN 174386)
LAUREL I. HANDLEY (SBN 231249)
GENAIL M. ANDERSON (SBN 236834)
PITE DUNCAN, LLP
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
SAN DIEGO, CA 92177-0935
TELEPHONE: (858) 750-7600
FACSIMILE: (619) 590-1385
E-Mail: lhandley@piteduncan.com

Attorneys for Plaintiff in Intervention U.S. BANK, National Association

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION - WESTERN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>718 West Wilson Avenue<br>Glendale, California 91203<br>Lot 17 of Tract no. 4531, in the County of Los Angeles, California, as per map recorded at Book 52, page 18 of Parcel Maps, Office of the County Recorder; and<br><br>Hovsep Boghossian,<br><br>Defendant(s).<br>U.S. BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff in Intervention,<br><br>v.<br><br>HOVSEP DERBOGHOSSIAN (a.k.a. HOVSEP BOGHOSSIAN) an individual, REMY MAZMANIAN, an individual, NATIONS TITLE COMPANY OF CALIFORNIA, REGENCY ESTATE PROPERTIES, INC., a California corporation, TRANSUNION TITLE INSURANCE COMPANY, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. 2:09-cv-06487-JHN-VBKx<br><br>U.S. BANK'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Complaint Filed:       9/30/2009<br>Complaint in Intervention Filed: 1/28/2010<br>Trial Date:     June 7, 2010<br><br>Judge:      Hon. Jacqueline H. Nguyen<br>Date:       March 7, 2011<br>Time:       2:00 p.m.<br>Court Room:  790 |

/././

**TO THE HONORABLE COURT, TO DEFENDANTS-IN-INTERVENTION NATIONS TITLE COMPANY OF CALIFORNIA AND TRANSUNION TITLE INSURANCE COMPANY AND THEIR ATTORNEYS OF RECORD AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on **MARCH 7, 2011** at 2:00 p.m. or as soon thereafter as the matter may be heard in Courtroom 790 of the above-entitled Court located at 255 East Temple Street, Los Angeles, California, before the Honorable Jacqueline Nguyen, United States District Judge, Plaintiff-in-Intervention, U.S. Bank National Association ("U.S. Bank") will and hereby does move this Court, pursuant to Rule 56(a), (b) and (c) of the *Federal Rules of Civil Procedure*, for an Order granting partial summary judgment in favor or U.S. Bank on its Breach of Contract and Negligence causes of action against Defendants-in-Intervention Nations Title Company of California and TransUnion Title Insurance Company ("TransUnion") on the ground that there is no issue as to any material fact and U.S. Bank is entitled to Judgment as a matter of law:

This Motion is brought on the following grounds:

1.    The undisputed facts demonstrate that U.S. Bank is entitled to judgment as a matter of law on its Breach of Contract claim against Nations Title because Nations Title failed to strictly and faithfully comply with the terms of the Lender's Instructions to Title and Escrow, to which it specifically agreed, all to the damage of U.S. Bank.

2.    The undisputed facts demonstrate that U.S. Bank is entitled to judgment as a matter of law on its Breach of Contract claim against TransUnion because Nations Title was the agent for TransUnion with regard to the title insurance policy that was ordered and paid for by U.S. Bank and Nations Title failed to strictly and faithfully comply with the terms of the Lender's Instructions to Title and Escrow, to which it specifically agreed, all to the damage of U.S. Bank.

3.    The undisputed facts demonstrate that U.S. Bank is entitled to judgment as a matter of law on its Negligence claim against Nations Title because Nations Title failed to strictly and faithfully comply with the terms of the Lender's Instructions to Title and Escrow, to which it specifically agreed, Nations Title breached its duty of care to U.S. Bank in that it was the only party who could have recognized that the parties were relying on different Preliminary Title Reports and

1  Nations Title failed to exercise even ordinary care in adequately investigating and confirming

2  whether U.S. Bank agreed to show an EPA Lien as senior to its Deed of Trust on the final title policy

3  that U.S. Bank ordered, all to the damage of U.S. Bank.

4      4.    The undisputed facts demonstrate that U.S. Bank is entitled to judgment as a matter

5  of law on its Negligence claim against TransUnion because Nations Title was negligent while it was

6  acting as the duly authorized agent for TransUnion, which negligence caused damage to U.S. Bank.

7      This Motion is made following U.S. Banks' efforts to meet and confer pursuant to Local Rule

8  7-3 on January 24, 2011 and January 27, 2011 and February 7, 2011. See Declaration of Genail M.

9  Anderson, ¶ .

10     This Motion will be based on this Notice, the attached Memorandum of Points and

11  Authorities filed and served concurrently herewith, all pleadings and papers on file herein, the

12  Separate Statement of Uncontroverted Material Facts, the Declarations of Laurel I. Handley, Genail

13  M. Anderson and Leslie Boyer and the evidence attached thereto and upon such oral and

14  documentary evidence as may be presented at the hearing on this Motion.

15  Dated: February 7, 2011            PITE DUNCAN, LLP

16

17                         /s/ Laurel I. Handley
                           LAUREL I. HANDLEY
18                         Attorneys for Plaintiff-in-Intervention
                           U.S. Bank, National Association
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   Statement of Undisputed Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   The Preliminary Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   The Lender's Instructions to Title and Escrow . . . . . . . . . . . . . . . . . . . . . 8

    C.   The Borrower's Default and the Title Claim . . . . . . . . . . . . . . . . . . . . . . . 11

III.  Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.   The Lender's Instructions to Escrow and Title Constitute a Contract . . . . . . . . . 12

    B.   Defendants Breached the Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.   U.S. Bank has been Damaged by Defendants Breach . . . . . . . . . . . . . . . . . 15

    D.   Defendants have no Defense to the Breach of Contract Claim . . . . . . . . . . . . 16

        1.   The E-mail from Lisa Long Did Not Modify the Lender's Instructions . 16

        2.   Rescission Is Not Available to Defendants Because There Was
           No Mistake . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        3.   Even If There Was a Mistake, Rescission Is Not Available Because
           Defendants Should Bear the Risk of the Mistake and Because of Defendants'
           Neglect of a Legal Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        4.   Even If There Was a Mistake, the Remedy of Rescission Is Not Available
           Because Defendants Have Not Complied with Civil Code section 1693.
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        5.   Even If There Was a Mistake, the Remedy of Rescission Is Not Available
           Because U.S. Bank Cannot Be Placed in the Status Quo. . . . . . . . . . . . 24

V.    Even if there was no Breach of Contract, Defendants are Liable for Negligence. . . . . . 25

VI.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1

TABLE OF AUTHORITIES

2

*Cases*

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4

*Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1061 (E.D. Cal. 2009) . . . . . . . . . . . 11

5

*Brunzell Const. Co. v. G. J. Weisbrod, Inc.*, 134 Cal. App. 2d 278, 284-85

6

(Cal. Ct. App. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

7

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466,

8

1468 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9

*Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10

*Claussen v. First Am. Title Guar. Co.*, 186 Cal. App. 3d 429, 435-37,

11

(Cal. Ct. App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 23, 25. 26

12

*Donovan v. RRL Corp.*, 26 Cal. 4th 261, 283-84 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

13

*Goodman v. Citizens Life & Cas. Ins. Co.*, 253 Cal. App. 2d 807, 817 (Cal. Ct. App. 1967) . . 17

14

*Grenall v. United of Omaha Life Ins. Co.* 165 Cal.App.4th 188 (2008). . . . . . . . . . . . . . . . . . . . . . 22

15

*Hall v. Remp,* 73 Cal. App. 2d 377, 381 (Cal. Ct. App. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

16

*Harabedian v. Zurich Ins. Co.*, 218 Cal. App. 2d 702, 706 (Cal. Ct. App. 1963) . . . . . . . . . . . 19

17

*Harper v. Goldschmidt*, 156 Cal. 245, 249 (1909) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

18

*Hastings v. Bank of America,* 79 Cal.App. 2d 627, 629-630 (1947) . . . . . . . . . . . . . . . . . . . . . . 12

19

*J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 396 (Cal. Ct. App. 2009) . . . . . . . . . . . . . 25

20

*Kirk Corp. v. First Am. Title Co.*, 220 Cal. App. 3d 785, 806 (Cal. Ct. App. 1990) . . . . . . . . . 25

21

*Markowitz v. Fid. Nat. Title Co.*, 142 Cal. App. 4th 508, 526 (Cal. Ct. App. 2006). . . . . . . . . . 15

22

*Money Store Inv. Corp. v. S. California Bank*, 98 Cal. App. 4th 722-729

23

(Cal. Ct. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

24

*Rianda v. San Benito Title Guar. Co.*, 35 Cal.2d 170, 173 (1950) . . . . . . . . . . . . . . . . . . . . . . . 15

25

*San Filippo v. Vita*, 82 Cal.App.2d 290, 294 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26

*State of Cal., on Behalf of California Dept. of Toxic Substances Control v. Campbell*, 138 F.3d

27

772, 780 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28

*Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1589 (Cal. Ct. App. 2005) . . . . . 20, 21

U.S. BANK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*Summit Financial Holdings, Ltd. v. Contintental Lawyers Title Co.*, 27 Cal.4th 705-711 . . 13, 23

*Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  . . . . . . . . . . . . . . . 12

*Zang v. Nw. Title Co.*, 135 Cal. App. 3d 159, 169, 185 Cal. Rptr. 176,

182 (Cal. Ct. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Statutes*

California Civil Code

  § 1057 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

  § 1550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

  § 1577 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 23

  § 1689 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

  § 1691 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

  § 1693. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

  § 1698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

California United States District, Central District Local Rule

  7-3  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rules of Civil Procedure

  56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

  56(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

  56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Other*

Restatement (Second) of Contracts § 154 (1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 221, 22

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Plaintiffs case against Defendants Nations Title Company of California and TransUnion Title Insurance Company is a relatively simple breach of contract and negligence case. Although there are numerous undisputed facts, it boils down to the following: U.S. Bank ordered and paid for a title insurance policy that insured a Deed of Trust as a first priority encumbrance against certain commercial real property. Defendants accepted the order and payment but failed to issue the title insurance policy that U.S. Bank ordered. Instead, six months after the close of escrow, Defendants issued a title insurance policy that listed as an exception to coverage a senior lien against the property in favor of the United States Environmental Protection Agency. This was not the title insurance product U.S. Bank had agreed to and purchased and U.S. Bank has been significantly harmed by Defendants failure to issue the policy that was purchased. Accordingly, Defendants are in breach of contract and, as will be discussed in more detail below, have acted negligently with respect to the close of escrow and issuance of the final title insurance policy to U.S. Bank. The undisputed facts will show that U.S. Bank is entitled to partial summary judgment against Nations Title Company of California and TransUnion Title Insurance Company for breach of contract and for negligence.

**II.**

**STATEMENT OF UNDISPUTED FACTS**

On June 27, 2008, Defendant Hovsep Derboghossian (hereinafter "Derboghossian" or the "Borrower") made and executed a U.S. Small Business Administration ("SBA") Note in the principal amount of $1,313,200.00 in favor of U.S. Bank, N.A. ("U.S. Bank") ("Note"). (Undisputed Material Fact ("UMF")[1] No. 1.) The Note was secured by a first priority deed of trust ("Deed of Trust") against the commercial real property commonly known as 718 West Wilson Avenue, Glendale, California 91203 and legally described as Lot 17 of Tract No. 4531, in the County of Los

---

[1]     Undisputed Material Facts are set forth in U.S. Bank's Statement of
Uncontroverted Facts and Conclusions of Law filed concurrently herewith.

1   Angeles, California, as per map recorded at Book 52, page 18 of Parcel Maps, Office of the County

2   Recorder ("Subject Property"). (UMF No. 2.)   The Note and Deed of Trust are referred together

3   herein as "Subject Loan." (UMF No. 3.) The Deed of Trust was recorded on June 27, 2008, in the

4   Official Records of Los Angeles County as Instrument No. 20081147427. (Id.) The Subject Loan

5   was used to finance the Borrower's purchase of the Subject Property from REMY MAZMANIAN

6   (hereinafter "Remy"). (UMF No. 4.) The sale of the Subject Property to the Borrower and the

7   financing of that sale are hereinafter referred to as the "Subject Transaction." (UMF No. 5.)

8          The escrow company for the Subject Transaction was Defendant Regency Estate Properties,

9   Inc. ("Regency Estate") and the title company, which also acted as the sub-escrow agent, was

10  Defendant Nations Title Company of California ("Nations Title). (UMF No. 6.)  Nations Title is

11  licensed by the Department of Insurance as an underwritten title company. (UMF No. 7.) Defendant

12  TransUnion Title Insurance Company ("TransUnion") is a California title insurance company that

13  is licensed by the Department of Insurance and is authorized to issue title insurance policies. (UMF

14  No. 8.)  In July of 2007, Nations Title and TransUnion entered into an Underwriting Agreement,

15  wherein TransUnion authorized Nations Title to act as its agent and issue certain of TransUnion's

16  title insurance products.   (UMF No. 9.)   In this case, Nations Title issued a TransUnion title

17  insurance policy to U.S. Bank in connection with its authority under the Underwriting Agreement.

18  In doing so, Nations Title was acting as the agent for TransUnion.  (UMF No. 10.)

19  **A.     The Preliminary Reports**

20         In March of 2008, the Borrower and Remy entered into a Purchase and Sale Agreement

21  wherein the Borrower agreed to purchase the Subject Property from Remy for the purchase price of

22  $1,750,000.00.   (UMF No. 12.)   The Borrower and Remy opened escrow with Regency Estates.

23  (UMF No. 13.)  On May 9, 2008, in connection with the Subject Transaction, and as is customary

24  in the industry, Regency Estate ordered a preliminary title report from Nations Title. (UMF No. 13.)

25  Thereafter, Nations Title issued a preliminary report dated May 7, 2008 (hereinafter "May

26  Preliminary Report"). (UMF No. 14.)  The May Preliminary Report identified as Item #13 on the

27  schedule of exceptions from coverage a lien in favor of the United States Environmental Protection

28  Agency ("EPA Lien"), which had been recorded against the Subject Property and Remy on March

7, 2008.  (UMF No. 15.)

On May 9, 2008, Nations Title  forwarded the May Preliminary Report to Regency Estate. (UMF No. 16.)   Sometime thereafter, a Business Development Officer for U.S. Bank named Craig Bittner was doing a site visit for the real property adjacent to the Subject Property.  (UMF No. 17.) A man named Art Mazmanian ("Art") came out of the Subject Property, approached Mr. Bittner and asked what he was doing.  (UMF No. 18.)  Upon hearing that Mr. Bittner was a loan officer for U.S. Bank for Small Business Administration ("SBA") loans, Art indicated his tenant was interested in buying his property, i.e the Subject Property.  (UMF No. 19.)  Thus, Mr. Bittner gave Art his business card.  (UMF No. 20.)  Thereafter, Art and the Borrower contacted and met with Craig Bittner to apply for a SBA loan to finance the Borrower's purchase of the Subject Property. (UMF No. 21.)

At all times, Art represented himself to Mr. Bittner as the owner of the Subject Property and the person who was selling the Subject Property to the Borrower.  (UMF No. 22.)  In fact, Mr. Bittner later discovered during his deposition in this litigation that Art is actually Remy Mazmanian's father.  (UMF No. 23.)  Remy was the owner of record for the Subject Property and Mr. Bittner thought that Art was an alias for Remy Mazmanian, i.e. that Art and Remy were one and the same person.   (UMF No. 24.)   Mr. Bittner testified that his sole contact for the Subject Transaction was Art, as the seller.  (UMF No. 25.)  In hindsight, it appears that Art was the equitable owner of the Subject Property and title was merely held in the name of his son, Remy.  (Id.)

During the meeting between Mr. Bittner, the Borrower and Art, Mr. Bittner gave the Borrower a loan package to complete in order to apply for an SBA loan.  (UMF No. 26.)  Thereafter, the Borrower submitted a loan package, which included the Borrower's financial information as well as the May Preliminary Report that had been provided to Regency Estate by Nations Title.  (UMF No. 27.)  Mr. Bittner compiled all of the necessary documentation from the Borrower and forwarded the loan package to U.S. Bank's credit department, so a loan officer could review the Borrower for an SBA loan.  (UMF No. 28.)

U.S. Bank's credit department received the loan application and supporting documents and the transaction was assigned to Dennis Brown to began the underwriting process.  (UMF No. 29.)

As part of that process, the Borrower and Remy, as the seller, submitted an Environmental Questionnaire to U.S. Bank which indicated that no federal, state or local agencies had ever investigated, cited or been involved with the Subject Property for violations of any environmental law and that no public agency had listed the Subject Property as a site requiring cleanup under any environmental law. (UMF No. 30.) Also as part of the underwriting process, U.S. Bank ordered an appraisal of the Subject Property, which was conducted by Irwin Wakcher. (UMF No. 31.)  In conducting the appraisal, Mr. Wakcher read the May Preliminary Report and noticed the EPA Lien. (UMF No. 32.)  On Friday, June 13, 2008, Mr. Wakcher e-mailed Mr. Bittner and advised him that the May Preliminary Report identified an EPA lien. (UMF No. 33.)  Mr. Bittner wrote back to Mr. Wakcher to advise that he saw the EPA Lien and that he would get an explanation. (UMF No. 34.) Mr. Bittner testified that prior to having it pointed out by Mr. Wakcher, he had not previously seen the EPA Lien, but that after Mr. Wakcher pointed it out he advised that he would ask the seller about the EPA lien. (UMF No. 35.)

Mr. Bittner then called Art (who he believed to be the seller of the Subject Property) and asked about the EPA Lien. (UMF No. 36.)  Mr. Bittner testified that Art told him the lien was a mistake in that it was actually a lien on the real property behind the Subject Property that had been used as a metal plating facility. (UMF No. 37.)  Art then told Mr. Bittner that he would talk to the title officer and have the lien removed. (UMF No. 38.)  Mr. Bittner then passed this information on to Dennis Brown, the U.S. Bank loan officer that was handing the Subject Transaction. (UMF No. 39.)

Thereafter, on June 16, 2008, Craig Bittner and U.S. Bank received a second Preliminary Report from Nations Title, dated June 16, 2008 (the "June Preliminary Report."). (UMF No. 40.) Mr. Bittner  forwarded a copy of the June Preliminary Report to the appraiser, Mr. Wakcher. (UMF No. 41.)  The June Preliminary Report was identical to the May Preliminary Report except that the EPA Lien was no longer listed as an exception in the June Preliminary Report. (UMF No. 42.)

It is undisputed that it was the June Preliminary Report that U.S. Bank utilized in underwriting the Subject Transaction and that U.S. Bank did not know Nations Title did not issue a Preliminary Report dated June 16, 2008. (UMF No. 43.)  It is also undisputed that Nations Title

did not actually issue the June Preliminary Report.  (UMF No. 44.)  Instead, it appears that Art or Remy Mazmanian or some other employee of Regency Estate, or even the Borrower himself, created the June Preliminary Report and forwarded it to U.S. Bank.   Nations Title testified, through its designee Daniel Bruno, that it never issued a preliminary report for the Subject Transaction other than the May Preliminary Report.  (UMF No. 45.)  Thus, when Nations Title was acting as sub-escrow agent, it was operating under the premise that the May Preliminary Report was the controlling report.  (UMF No. 46.)  However, when U.S. Bank was communicating regarding the Subject Transaction it was operating under the premise that the June Preliminary Report was the controlling report.  (UMF No. 47.)

There were several other considerations in the loan underwriting process including, among other things, the value of the Subject Property in relation to the loan, who would pay the closing costs and SBA fees, a prior bankruptcy filed by the Borrower's wife and the Borrower's eligibility under the SBA guidelines and Standard Operating Procedures.  However, none of these other considerations are relevant to the claims asserted by U.S. Bank against Nations Title and TransUnion.  Therefore they will not be detailed here.  What is important is that U.S. Bank ultimately approved the Borrower for the loan secured by the Subject Property.  (UMF No. 48.)

**B.    The Lender's Instructions to Title and Escrow**

On June 26, 2008, U.S. Bank forwarded to Nations Title a document entitled Lender's Instructions to Title and Escrow ("Lender's Instructions"). (UMF No. 49.)    The Lender's Instructions were signed by SBA Loan Processing Manager Sonja Weston-Fryer and provided as follows:

> Funds will be wired in the amount of $1,313,200.00 to Nations Title Company of California for credit to buyer in the above-reference transaction.

(UMF No. 50.)  The Lender's Instructions further provide:

> ESCROW/TITLE IS AUTHORIZED TO RECORD AND/OR USE THE ABOVE ITEMS FOR BENEFIT OF OUR BORROWER WHEN ESCROW/TITLE CAN INSURE THE FOLLOWING:
>
> 1.    **ALTA Title Policy** in the amount of **$1,313,200.00** to be forwarded to us by **Nations Title Company of California** reflecting said Deed of Trust in a **First** Lien Position.  Subject only to items numbered: **1(Pay if assessed), 2**

1   **(Pay taxes due plus penalties), 3 (Pay if assessed), 4(Pay if assessed), 5
2   (Issue endorsement 103.5), 6, 8, 9, (please issue endorsement 1031.1)** as
    shown on preliminary title Report dated **June 16, 2008**.  (*emphasis in
3   original*)

4   In addition, please issue endorsements 100, 116 and a 111.5 for each
    title policy requested above.

5   (UMF No. 51.)  The items numbered 1-6 and 8-9 in the Lender's Instructions relate to property taxes,

6   county taxes, supplemental taxes, assessments, water rights, CC&Rs, an instrument recorded

7   February 1, 1995 and an easement or lesser rights for pole lines.  (UMF No. 52.)  Moreover, the

8   items numbered 1-6 and 8-9 above were the same on both the May Preliminary Report and the June

9   Preliminary Report received by U.S. Bank.  (UMF No. 53.)  Finally, the Lender's Instructions

10  provided that "Any deviation of the terms set forth above is not acceptable without the prior written

11  approval of U.S. Bank National Association" and required that a final title insurance policy be

12  forwarded to U.S. Bank within 30 days of the close of escrow.  (UMF No. 54.)

13  Daniel Bruno, the title officer at Nations Title handling the Subject Transaction testified that

14  upon receipt of the Lender's Instruction, he would have read them, as was his practice to do.  (UMF

15  No. 55.)  Mr. Bruno also testified that he did not verify that the date on the Preliminary Report that

16  was in his title file matched the date of the Preliminary Report identified in the Lender's Instructions.

17  (UMF No. 56.)  Mr. Bruno testified that prior to having received the Lender's Instructions, Art

18  notified him that the buyer and the lender had agreed that item 13 would show on the final title

19  policies issued by TransUnion.  (UMF No. 57.)  Further Mr. Bruno testified that Art offered to

20  provide an Indemnity Agreement to Nations title with regard to the EPA Lien.  (UMF No. 58.)  In

21  this Indemnity Agreement, Nations Title agreed to issue each policy of title insurance regarding the

22  Subject Transaction in exchange for Remy Mazmanian authorizing Nations Title to hold $50,000

23  from the loan proceeds.  (UMF No. 59.)  To this day, Nations Title still holds this $50,000 to be used

24  to obtain a release of the EPA Lien, if necessary, or to protect Nations Title or its insured, i.e. U.S.

25  Bank and the Borrower.  (UMF No. 60.)

26  Mr. Bruno further testified that he did not see item number 13 identified in the Lender's

27  Instructions as an item that would be excepted from coverage.  (UMF No. 61.)  Thus, although Mr.

28  Bruno did not complete this task himself, someone at Nations Title was tasked with contacting U.S.

1 Bank to obtain verification that item number 13 was authorized to be included in the final title policy

2 issued to U.S. Bank.  (UMF No. 62.)

3    Specifically, on June 26, 2008 at 10:50 a.m. Susie Navarro, who was acting as Daniel

4 Bruno's title assistant, sent an e-mail to Lisa Long of U.S. Bank with the subject line "3006309-DB/

5 SUPPLEMENT NEEDED."  (UMF No. 63.)   Lisa Long was an SBA loan processor who worked

6 on the Subject Transaction.  (UMF No. 64.)  However, she was not a manager at U.S. Bank.  (Id.)

7 At 12:05 p.m. Lisa Long responded to Susie with the following message:

8    *It is ok to leave item #13 in the title commitment.  Sorry for any confusion.*

9 (UMF No. 65.)  Several people were copied on the e-mail exchange including Elizabeth Velasquez,

10 who was not an employee of Nations Title, but was assisting her husband, who was an employee

11 with Nations Title handling sales.  (UMF No. 66.)   Then at 1:05 p.m., Elizabeth Velasquez sent a

12 reply e-mail to Lisa Long with the following message:

13    *Lisa, is it okay to show said item on schedule b of the title policy? You're email says*

14    *commitment.  Please advise.*

15 (UMF No. 67.)  At 1:24 p.m. Lisa Long responded:

16    *Yes.*

17 (UMF No. 68.)  Elizabeth Velasquez then forwarded Lisa Long's e-mail response to Daniel Bruno

18 at 1:40 p.m. with the following message:

19    *See below email.  I asked her about showing the item under schedule B.  Will this*

20    *suffice for now?*

21 (UMF No. 69.)  Prior to the close of escrow, there were no further communications between Nations

22 Title and U.S. Bank regarding the Lender's Instructions, the preliminary reports or the final title.

23 (UMF No. 70.)  However, the title officer, Daniel Bruno, testified that he considered the e-mail from

24 Lisa Long to constitute a modification to the Lender's Instructions.  (UMF No. 71.)

25    Mr. Bruno then signed the Lender's Instructions under the following language:

26 "ACKNOWLEDGE AND AGREE AS SET FORTH ABOVE" agreeing to the terms in the Lender's

27

28

Instructions.[2] (UMF No. 72.) Then, in compliance with the terms of the Lender's Instructions, U.S. Bank wired the funds to Nations Title, as the sub-escrow agent for the Subject Transaction. (UMF No. 73.) Nations Title then proceeded to close the loan transaction on June 27, 2008. (UMF No. 74.) Because the loan amount was over one million dollars, Nations Title had to obtain specific authorization from TransUnion to finalize the transaction. (UMF No. 75.) On June 25, 2008, Daniel Bruno had forwarded the loan information to TransUnion to approve the transaction. (UMF No. 76.) On June 26, 2008, Dawn Weller of TransUnion approved the escrow to close subject to a few items, including compliance with the Lender's Instructions. (UMF No. 77.)

**C.      The Borrower's Default and the Title Claim**

The Borrower immediately defaulted on his payment obligations by failing to pay the first installment which became due on July 26, 2008, plus all subsequent installments under the Loan. (UMF No. 78.) As a result, U.S. Bank initiated foreclosure proceedings against the Subject Property. (UMF No. 79.)   Prior to completing the foreclosure proceedings, U.S. Bank became aware (for the first time) that the EPA Lien was a lien against the Subject Property. (UMF No. 80.) As U.S. Bank had not yet received a copy of the final title policy from Nations Title or TransUnion, U.S. Bank sent e-mails to Nations Title requesting a copy of the final policy. (UMF No. 81.) After several follow up messages, Nations Title finally provided the final title insurance policy in January of 2009, over six months after the close of escrow in June of 2008. (UMF No. 82.) The final title insurance policy ("Policy") listed the EPA Lien as an exception to coverage. (UMF No. 80.) U.S. Bank subsequently submitted a title claim against the Policy. (UMF No. 83.) However, TransUnion denied the claim based on its determination that the EPA Lien was listed as an exception to the final Policy. (UMF No. 83.)   This lawsuit then followed.

**III.**

**LEGAL STANDARD**

"A motion for summary adjudication, sometimes referred to as a motion for partial summary judgment, is governed by the same standard as a typical motion for summary judgment." *Barsamian*

---

[2]      Mr. Bruno testified that he did not remember whether he signed the Lender's Instructions before or after the e-mail exchange with Lisa Long had occurred.

1   *v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1061 (E.D. Cal. 2009) (citations omitted).  Summary

2   judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any

3   affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

4   to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Thus, the relevant inquiry in a summary

5   adjudication motion is threefold: is there a genuine issue, is that issue about a material fact, and is

6   the moving party entitled to judgment as a matter of law." *State of Cal., on Behalf of California*

7   *Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998)

8        A moving party who bears the burden of proof at trial is entitled to summary judgment when

9   the evidence indicates that no genuine issue of material fact exists.  *Celotex Corporation v. Catrett*,

10   477 U.S. 317, 324 (1986).  The burden then shifts to the non-moving party to "designate 'specific

11   facts showing that there is a genuine issue for trial.'" *Id* at 324.  "The mere existence of a scintilla

12   of evidence in support of the non-moving party's position is not sufficient" to defeat a motion for

13   summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

14   Moreover, mere disagreement or the bald assertion that a genuine issue of material fact exists will

15   not preclude the use of summary judgment. *California Architectural Bldg. Prod., Inc. v. Franciscan*

16   *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  Factual disputes whose resolution would not

17   affect the outcome of the litigation are irrelevant to the consideration of a motion for summary

18   judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

19                              **IV.**

20                           **ARGUMENT**

21   **A.   THE LENDER'S INSTRUCTIONS TO ESCROW AND TITLE CONSTITUTE A**
         **CONTRACT**
22

23        U.S. Bank has sued Nations Title and TransUnion for breach of contract; specifically, breach

24   of the Lender's Instructions, which constitutes a contract.  *Money Store Inv. Corp. v. S. California*

25   *Bank*, 98 Cal. App. 4th 722, 729 (Cal. Ct. App. 2002) (A lender's instructions to escrow constituted

26   an offer to contract.).  An escrow is typically the mutual exchange of instruments through a third

27   party and delivery to each party is conditioned on deposit by the other party. (Civ.Code,  1057; e.g.,

28   *Hastings v. Bank of America,* 79 Cal.App. 2d 627, 629-630 (1947).  Moreover, an "escrow holder

                              -12-

is a fiduciary of the parties to the escrow." *Summit Financial Holdings, Ltd. v. Contintental Lawyers Title Co.*, 27 Cal.4th 705, 710 (citations omitted).) 'Although "an escrow holder has no general duty to police the affairs of its depositors,' . . . an escrow holder's obligations are 'limited to **faithful compliance with . . . instructions**'. *Id.* (citations omitted) (emphasis added.).  It is settled law in California that "[e]scrow instructions are interpreted under the rules applicable to contracts." *Claussen v. First Am. Title Guar. Co.*, 186 Cal. App. 3d 429, 437 (Cal. Ct. App. 1986) (citations omitted).  As stated by California's First District Court of Appeal:

> The duties of a depositee ... are created and measured by the instructions of the depositor. By accepting the deposit and by acquiescence in the instructions the depositee undertakes to perform according to the terms thereof. There is a meeting of the minds and the birth of a contract.

*San Filippo v. Vita*, 82 Cal.App.2d 290, 294 (1947).

In this case, it is undisputed that on June 26, 2008, U.S. Bank sent the Lender's Instructions to both Nations Title and Defendant Regency Estate Properties.  (UMF No. 49.)  The Lender's Instructions were signed by Sonja Weston-Fryer, SBA Loan Processing Manager for U.S. Bank.  (UMF No. 50.)  It is further undisputed that Daniel Bruno, the title officer from Nations Title that was working on this matter accepted the offer to contract by signing the Lender's Instructions under the language ACKNOWLEDGE AND AGREE AS SET FORTH ABOVE. (UMF No. 72.)  If an escrow company assents to the terms of the lender's instructions, a valid contract is formed.  *Money Store Inv. Corp. v. S. California Bank*, 98 Cal. App. 4th 722, 729 (Cal. Ct. App. 2002).  Assent occurred in this case; there is an offer and acceptance of the contract, the terms of which are fully set forth in the Lender's Instructions.  (UMF Nos. 49-53.)

Finally, it is undisputed that the contract was supported by consideration in the form of funds in the amount of $1,313,200.00 wired by U.S. Bank to Nations Title, and Nations Title's agreement to distribute those funds in accordance with the Lender's Instructions and issue a title insurance policy pursuant to the terms of the Lender's Instructions.  (UMF Nos. 50, 72.)  Accordingly, the Lender's Instructions constitute a binding contract between U.S. Bank and Nations Title Company.  Because Nations Title was acting as the agent of TransUnion and obligated to issue a title insurance policy underwritten by TansUnion, TransUnion is also obligated under the terms of the Lender's

-13-

1  Instructions.  (UMF Nos. 7-11.)  Indeed, TransUnion specifically authorized the closing of the

2  Subject Transaction, subject to the Lender's Instructions.  (UMF Nos. 75-77.)  Accordingly, both

3  Defendants are obligated on the contract.

4  **B.    DEFENDANTS BREACHED THE CONTRACT**

5          As shown above, the Lender's Instructions constituted a contract.  The Lender's Instructions

6  provided that  "funds will be wired in the amount of $1,313,200.00 to Nations Title Company of

7  California for credit to buyer..."  (UMF No. 50.)  Further, the Lender's Instructions provided as

8  follows:

9          ESCROW/TITLE IS AUTHORIZED TO RECORD AND/OR USE THE ABOVE
           ITEMS FOR BENEFIT OF OUR BORROWER WHEN ESCROW/TITLE CAN
10         INSURE THE FOLLOWING:

11         1.      **ALTA Title Policy** in the amount of **$1,313,200.00** to be forwarded to us by
                   **Nations Title Company of California** reflecting said Deed of Trust in a
12                 **First** Lien Position.  Subject only to items numbered: **1(Pay if assessed), 2
                   (Pay taxes due plus penalties), 3 (Pay if assessed), 4(Pay if assessed), 5
13                 (Issue endorsement 103.5), 6, 8, 9, (please issue endorsement 1031.1)** as
                   shown on preliminary title Report dated **June 16, 2008**.  (*emphasis in
14                 original*)

15                 In addition, please issue endorsements 100, 116 and a 111.5 for each
                   title policy requested above.
16

17  (UMF No. 51.)  The items numbered 1-6 and 8-9 in the Lender's Instructions relate to property taxes,

18  county taxes, supplemental taxes, assessments, water rights, CC&Rs, an instrument recorded

19  February 1, 1995 and an easement or lesser rights for pole lines.  (UMF No. 52.)  Moreover, the

20  items numbered 1-6 and 8-9 above were the same on both the May Preliminary Report and the June

21  Preliminary Report. (UMF No. 53.)  Finally, the Lender's Instructions provided that "Any deviation

22  of the terms set forth above is not acceptable without the prior written approval of U.S. Bank

23  National Association."  (UMF No. 54.)

24          Daniel Bruno testified that upon receipt of the Lender's Instruction, he read and understood

25  the them. (UMF No. 55.)  Mr. Bruno signed the Lender's Instructions, agreeing to the terms therein,

26  U.S. Bank wired the agreed upon funds and Nations Title  proceeded to close the loan transaction

27  on June 27, 2008. (UMF Nos. 72-74.)

28          Subsequently, on January of 2009, Nations Title and TransUnion did issue an ALTA Title

-14-

Policy to U.S. Bank in the amount of $1,313,200.00. (UMF Nos. 82.) However, the Title Policy did not reflect U.S. Bank's lien in First lien position, as required by the contract. (See UMF No. 83.) Additionally, the Title Policy included an unauthorized item as an exception to coverage, namely the EPA lien. Id. The failure of Nations Title and TransUnion to issue a title policy in accordance with the Lender's Instructions constitutes a breach of contract. *Money Store Investment Corp. v. Southern California Bank*, 98 Cal.App.4th 722, 728 (2002). Indeed, "[a]n escrow holder must comply strictly with the instructions of the parties." *Claussen v. First Am. Title Guar. Co.*, 186 Cal. App. 3d 429, 435-36, (Cal. Ct. App. 1986) (citing *Rianda v. San Benito Title Guar. Co.*, 35 Cal.2d 170, 173 (1950). Indeed, "[u]pon the escrow holder's breach of an instruction that it has contracted to perform or of an implied promise arising out of the agreement with the buyer or seller, the injured party acquires a cause of action for breach of contract. *Claussen v. First Am. Title Guar. Co.*, 186 Cal. App. 3d 429, 435-36 (Cal. Ct. App. 1986) (citations omitted). Here, Defendants failed to strictly comply with the instructions of U.S. Bank and is liable for its breach. *Id.*; *Markowitz v. Fid. Nat. Title Co.*, 142 Cal. App. 4th 508, 526 (Cal. Ct. App. 2006). (" If the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract.").

**C.    U.S. BANK HAS BEEN DAMAGED BY DEFENDANTS BREACH**

Finally, U.S. Bank has been damaged by Defendants' failure to comply with the terms of the Lender's Instructions and failure to issue an ALTA Title Policy reflecting the Deed of Trust in a First lien position. U.S. Bank funded a loan to Hovsep Derboghossian in the amount $1,313,200.00, which is not secured by a first priority lien on the Subject Property but is instead junior to a significant environmental lien in favor of the EPA. (UMF Nos. 73, 83-84.) Thus, U.S. Bank's security interest in the Subject Property has been impaired by Defendants breach and U.S. Bank has been precluded from making a claim under the title policy that it contracted to procure.

If U.S. Bank were to foreclose on its security interest in the Subject Property, it would take title subject to the EPA lien and subject to the significant clean-up requirements of the EPA. According to the United States of America, the current total for the clean up costs associated with the clean up site are over $2,000,000.00. The Subject Property is not worth a sufficient amount to

1   pay for the entirety of the EPA lien, let alone U.S. Bank's now junior security interest in the Subject

2   Property.  Therefore, U.S. Bank has been damaged in the amount of the total payoff for the loan,

3   which was intended to be secured by a First lien on the Subject Property and insured as such by

4   Defendants.

5   **D.    DEFENDANTS HAVE NO DEFENSE TO THE BREACH OF CONTRACT CLAIM**

6           U.S. Bank anticipates that Defendants will assert various defense to Plaintiff's breach of

7   contract claim based on an e-mail exchange between Nations Title and U.S. Bank, which Dan Bruno

8   alleges modified the terms of the Lender's Instructions, and based on the theory that rescission of

9   the contract is warranted based on mutual mistake.  However, as will be shown below, each of

10  Defendants' theories fail as a matter of law.

11          **1.    The E-mail from Lisa Long Did Not Modify the Lender's Instructions**

12          U.S. Bank anticipates Defendants will claim the Lender's Instructions were modified by one

13  ambiguous e-mail exchange between Nations Title and U.S. Bank's employee Lisa Long.  Initially,

14  it should be noted that the Lender's Instructions were signed by Sonja Weston-Fryer, SBA Loan

15  Processing Manager for U.S. Bank. (UMF No. 50.)  Lisa Long, according to the signature block on

16  her e-mail, was a SBA Loan Processor.   (UMF No. 64.)  Yet, Defendants assert a brief and

17  ambiguous e-mail exchange between one employees of Nations Title, one spouse of an employee

18  of Nations Title (neither of whom were the title officer assigned to the case) and Lisa Long

19  constitutes a modification of the Lender's Instructions.  In that e-mail exchange, which began on

20  June 26, 2008 at 10:50 a.m. Susie Navarro, who was acting as Daniel Bruno's title assistant, sent an

21  e-mail to Lisa Long with the subject line "3006309-DB/ SUPPLEMENT NEEDED."  At 12:05 p.m.

22  Lisa Long responded to Susie with the following message:

23          *It is ok to leave item #13 in the title commitment.  Sorry for any confusion.*

24  Several people were copied on the e-mail exchange including Elizabeth Velasquez, who was acting

25  as a title assistant with Nations Title.  Then at 1:05 p.m., Elizabeth Velasquez sent an e-mail to Lisa

26  Long with the following message:

27              *Lisa, is it okay to show said item on schedule b of the title policy? You're email says*
                *commitment.  Please advise.*

28

1   At 1:24 p.m. Lisa Long responded:

2       *Yes.*

3   Elizabeth Velasquez then forwarded Lisa Long's e-mail response to Daniel Bruno at 1:40 p.m. with

4   the following message:

5       *See below email. I asked her about showing the item under schedule B. Will this
        suffice for now?*

6

7   (See UMF Nos. 65-69.)   There were no further communications between Nations Title and U.S.

8   Bank regarding the loan, the Lender's Instructions or any other matter.  (UMF No. 70.)

9       Title officer Dan Bruno testified that he considered the e-mail from Lisa Long to constitute

10  a modification to the Lender's Instructions, which read in pertinent part:

11      **ANY DEVIATION FROM THE TERMS SET FORTH ABOVE IS NOT
        ACCEPTABLE WITHOUT THE PRIOR WRITTEN APPROVAL OF U.S.
        BANK NATIONAL ASSOCIATION.** (Emphasis in original.)

12

13  (UMF Nos. 54, 71.)

14      However, as will be shown, the e-mail from Lisa Long cannot be considered a modification

15  of written contract between the parties.

16      California Civil Code section 1968 provides as follows:

17      (a) **A contract in writing may be modified by a contract in writing.**

18      . . . .

19      (d) Nothing in this section precludes in an appropriate case the application of rules
        of law concerning estoppel, oral novation and substitution of a new agreement,
20      rescission of a written contract by an oral agreement, waiver of a provision of a
        written contract, or oral independent collateral contracts.

21

22  Cal. Civ. Code § 1698 (West) (emphasis added).  California Courts interpreting this statue have

23  consistently held that "A contract in writing cannot be altered except by another contract in writing

24  or by an executed oral agreement." *Hall v. Remp,* 73 Cal. App. 2d 377, 381 (Cal. Ct. App. 1946).

25  Thus, an agreement constituting a modification must be supported by an offer, an acceptance and

26  consideration.  Moreover, a party claiming that a contract has been modified, has the burden of

27  proving that a subsequent contract was formed. *See Goodman v. Citizens Life & Cas. Ins. Co.*, 253

28  Cal. App. 2d 807, 817 (Cal. Ct. App. 1967) (party asserting modification must show "evidence . .

-17-

1  | . sufficient to establish all the elements of a contract.")

2  | In this case, it can hardly be said that the short, ambiguous e-mail exchange between an

3  | employee of Nations Title (but not the title officer working on the escrow), the spouse of another

4  | employee of Nations Title and one employee of U.S. Bank (but not the manager that signed the

5  | Lender's Instructions) engaged in an offer and acceptance exchange or that the "agreement"

6  | contemplated by the message was supported by consideration. Indeed, the actual subject matter of

7  | the e-mail exchange was not even clearly identified; the only identifying reference was the subject

8  | line with the relevant escrow number and a reference to "item #13." (See UMF Nos. 63-69.) There

9  | was no reference to the actual EPA lien, which is the item #13 to which Nations Title was referring.

10 | There was no reference to the Statement of Information, which is the item #13 to which U.S. Bank

11 | was referring. There was no reference the Lender's Instructions or that a modification of the

12 | Lender's Instructions was contemplated. Nor did the parties to the e-mail exchange in any way

13 | discuss the fact that U.S. Bank had contracted to obtain an "ALTA Title Policy . . . reflecting [its]

14 | Deed of Trust in a First lien position" and that showing "item #13" would change that. (See

15 | Lender's Instructions.) If Nations Title sought to modify the Lender's Instructions, it should have

16 | been clear about what it was seeking to modify. And it should have explicitly addressed the fact that

17 | "showing" the EPA lien (which is what it referred to as item #13) on schedule B of the final title

18 | policy would mean that U.S. Bank would not obtain a "Deed of Trust in a First lien position" as

19 | ordered by the Lender's Instructions. This was never discussed or contemplated by U.S. Bank and

20 | the e-mail exchange cannot be considered a modification of the Lender's Instructions.

21 | Additionally, even if the e-mail exchange could be considered an "offer and acceptance"

22 | (which it is not) and even if the alleged agreement reached in the e-mail exchange could be found

23 | to be supported by consideration (which it is not), it is clear that there was no meeting of the minds

24 | sufficient to enforce a contract. *Harper v. Goldschmidt*, 156 Cal. 245, 249 (1909) ("As an essential

25 | of every contract there must be an agreement and meeting of minds.") Instead, the e-mail exchange

26 | is ambiguous in light of the conflicting parol evidence regarding the parties' understanding of the

27 | meaning of "item #13." It is undisputed that to Nations Title, item #13 was the EPA lien and that

28 | to U.S. Bank item #13 was the Statement of Information. (UMF Nos. 43-44.) "Parol evidence is

ordinarily admissible to explain the meaning of an agreement." *Harabedian v. Zurich Ins. Co.*, 218 Cal. App. 2d 702, 706 (Cal. Ct. App. 1963) and cased cited therein ("extrinsic evidence may be considered, not to vary or modify the terms of the agreement but to aid the court in ascertaining the true intent of the parties."). Viewing the parol evidence in this case regarding the June 26, 2008 e-mail exchange, it is clear that there was no meeting of the minds with regard to inclusion of item #13 on the final title policy. Moreover, there was never any discussion, let alone a meeting of the minds as to issuance of a final title policy in which U.S. Bank's Deed of Trust was not in a "First lien position." Accordingly, the e-mail exchange cannot be considered a written contract sufficient to modify the terms of the Lender's Instructions. See Cal. Civ. Code § 1550 (West) identifying the essential elements of a contract; *see also Harper v. Goldschmidt*, 156 Cal. 245, 249 (1909).

## 2.   Rescission Is Not Available to Defendants Because There Was No Mistake

U.S. Bank also anticipates Defendants will claim they are relieved of their obligations under the Lender's Instructions based on mistake. Rescission of a contract based on mistake is a remedy provided for by California Civil Code section 1689, which provides as follows:

(a) A contract may be rescinded if all the parties thereto consent.

(b) A party to a contract may rescind the contract in the following cases:

(1) <u>If the consent of the party rescinding</u>, or of any party jointly contracting with him, <u>was given by mistake</u>, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

. . . .

California Civil Code section 1577 defines a mistake of fact as follows:

Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.

Cal. Civ. Code § 1577 (West).

In this case, rescission is not available to Defendants because there was simply no mistake; the Lender's Instructions clearly indicate the terms of the contract as follows:

ESCROW/TITLE IS AUTHORIZED TO RECORD AND/OR USE THE ABOVE ITEMS FOR BENEFIT OF OUR BORROWER WHEN ESCROW/TITLE CAN INSURE THE FOLLOWING:

1.   **ALTA Title Policy** in the amount of **$1,313,200.00** to be forwarded to us by **Nations Title Company of California** reflecting said Deed of Trust in a **First** Lien Position.  Subject only to items numbered: <u>**1(Pay if assessed), 2 (Pay taxes due plus penalties), 3 (Pay if assessed), 4(Pay if assessed), 5 (Issue endorsement 103.5), 6, 8, 9, (please issue endorsement 1031.1)** as shown on preliminary title Report dated **June 16, 2008**</u>.  (*emphasis in original*)

In addition, please issue endorsements 100, 116 and a 111.5 for each title policy requested above.

It is undisputed that the above language is quoted directly from the Lender's Instructions. (UMF No. 51.)  There is simply no mistake about the instructions that were given, and there is simply no mistake that Nations Title accepted the Lender's Instructions.  The only "mistake" is that Nations Title failed to properly read the Lender's Instructions, which clearly and explicitly identified a **June 16, 2008** preliminary title report.  The fact that Nations Title did not actually issue a June 16, 2008 Preliminary Report does not mean that Nations Title was mistaken about the terms of the contract.  Instead, it means that Nations Title failed to exercise due care in entering into the contractual relationship.  Indeed, Daniel Bruno, the title officer handling the transaction, testified that he did not really pay attention to the date of the preliminary title report that was identified in the Lender's Instructions.  (UMF No. 55-56.)  Instead, he just assumed (as was his typical practice) that the date of the preliminary title report identified in the Lender's Instructions was the same as the date of the actual preliminary report in the title file.  (See UMF No. 56.)  Unfortunately, this assumption was wrong.  And unfortunately for Defendants, a wrong assumption based upon one's failure to read the terms of the contract does not amount to a mistake of fact.  *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1589 (Cal. Ct. App. 2005) ("Plaintiff has cited no California cases (and we are aware of none) that stand for the extreme proposition that a party who fails to read a contract but nonetheless objectively manifests his assent by signing it- absent fraud or knowledge by the other contracting party of the alleged mistake-may later rescind the agreement on the basis that he did not agree to its terms.  To the contrary, California authorities demonstrate that a contracting party is not entitled to relief from his or her alleged unilateral mistake under such circumstances.")  The

California Court of Appeals in *Stewart v. Preston Pipeline Inc*. recognized that rescission is not available when a party to contract assents to the terms without having read the terms of the contract. Indeed, as the *Stewart* Court stated, "[i]t is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it. *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588 (Cal. Ct. App. 2005). In this case, the Court should similarly find that Defendants cannot avoid the impact of the express language in the Lender's Instructions related to the preliminary title report dated June 16, 2008, simply because Nations Title failed to read this portion of the Lender's Instructions. In sum, Mr. Bruno's failure to read the material date identified in the Lender's Instructions is not a mistake upon which a rescission claim can be made - it is a failure to read the contract to which Defendants are bound.

### 3. Even If There Was a Mistake, Rescission Is Not Available Because Defendants Should Bear the Risk of the Mistake and Because of Defendants'  Neglect of a Legal Duty

Even if Mr. Bruno's failure to read the date of the Preliminary Report identified in the Lenders' Instruction does amount to a mistake, it does not entitle Defendants to rescission for two reasons. First, Defendants should bear the risk of the mistake because Nations Title was the only party that knew the May 7, 2008  Preliminary Report was the only "authentic" Preliminary Report, and was thus, the only party who could have discovered the "mistake" prior to the close of escrow. Second, Mr. Bruno's failure to read the date and recognize the discrepancy amounts to neglect of a legal duty.

Initially, Nations Title (and by way of the agency relationship, its principal TransUnion) should bear the risk of its mistake. The California Supreme Court has adopted section 154 of the Restatement Second of Contracts, which provides:

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the

-21-

1    circumstances to do so.

2    Restatement (Second) of Contracts § 154 (1981); *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 283-84

3    (2001) (adopting section 154 in California).  In this case, factors (a) and (b) do not apply.  Thus, the

4    Court must determine whether it is reasonable under the circumstances of this case to allocate the

5    risk of the mistake to Nations Title and TransUnion.[3]  The undisputed facts demonstrate that it is

6    reasonable to do so because Nations Title is the only entity that had all of the information available

7    to both identify the mistake and correct the mistake.  Indeed, U.S. Bank did not know that Nations

8    Title did not issue a Preliminary Report dated June 16, 2008.  (UMF No. 43.)  Moreover, U.S. Bank

9    did not know that the EPA lien was listed as an exception on the Preliminary Report that was being

10   used by the title company.  (UMF No. 44.)  Instead, it was Nations Title (and as between the parties

11   to this Motion, only Nations Title) that knew only one Preliminary Report, dated May 7, 2008, has

12   been issued.  Additionally, it was Nations Title (and as between the parties to this Motion, only

13   Nations Title) that knew that the EPA lien was listed as an exception on the Preliminary Report that

14   was being used.  When Nations Title received the Lender's Instructions, it should have seen the June

15   16, 2008 date, realized that a mistake was being made, and contacted someone at U.S. Bank to

16   clarify the situation.  Because it was the only party who had enough information to recognize the

17   mistake, the circumstances dictate that it is reasonable to allocate the risk of the mistake to Nations

18   Title and its principal, TransUnion.

19          Additionally, Mr. Bruno's failure to read the date in the Lender's Instructions amounts to

20   neglect of a legal duty, which precludes rescission.  Civil Code section 1577, and California Courts

21   "instruct that the risk of a mistake must be allocated to a party where the mistake results from that

22   party's neglect of a legal duty."  *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 283 (2001).  "Ordinary

23   negligence does not constitute neglect of a legal duty."  *Id.*  For example, ordinary carelessness in

24   computing a bid or contract price is the type of error or negligence that a reasonable business person

25   may make in the course of doing business, and this type of error does not necessarily amount to

26

27   [3]      It is appropriate for the court to make a determination as to allocation of the risk on a
             motion for summary judgment.  *See Grenall v. United of Omaha Life Ins. Co.* 165
28           Cal.App.4th 188 (2008).

"neglect of a legal duty." *Id.*; see also *Brunzell Const. Co. v. G. J. Weisbrod, Inc.*, 134 Cal. App. 2d 278, 284-85 (Cal. Ct. App. 1955) (carelessness in computing a bid was a mistake but it did not amount to neglect of a legal duty.)

However, in this case, Nations Title went beyond ordinary carelessness or negligence in the performance of its duties. It is settled law that an escrow company has a fiduciary duty to the parties to the escrow and must **faithfully and strictly comply with all lender's instructions**. *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal.4th 705, 711 (2002) ("An escrow holder is an agent and fiduciary of the parties to the escrow."); *Claussen v. First Am. Title Guar. Co.*, 186 Cal. App. 3d 429, 435 (Cal. Ct. App. 1986) ("An escrow holder must comply strictly with the instructions of the parties."). Additionally, "[i]n the event of a conflict or apparent error in instructions, the escrow holder is obliged to take corrective steps before obeying questionable instructions." *Claussen v. First Am. Title Guar. Co.*, 186 Cal. App. 3d 429, 436 (Cal. Ct. App. 1986). In this case, Nations Title had a legal duty to comply with the Lender's Instructions and Nations Title failed to do so. Moreover, if there was an apparent error in the Lender's Instructions (which Mr. Bruno would have discovered had he properly read the entire document, including the relevant dtes) it was Nations Title that was obligated to investigate that error. Again, Nations Title failed to do so. This is precisely the type of "neglect of a legal duty" that is contemplated by Section 1577 and the Courts in barring rescission on the grounds of mistake. Accordingly, the court should find as a matter of law that Nations Title's actions constituted the neglect of a legal duty barring rescission.

**4.     Even If There Was a Mistake, the Remedy of Rescission Is Not Available Because Defendants Have Not Complied with Civil Code section 1693.**

The procedure for rescinding a contract in California is governed by statute; specifically by California Code of Civil Procedure section 1691, which provides as follows:

> Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:
>
> (a) Give notice of rescission to the party as to whom he rescinds; and
>
> (b) Restore to the other party everything of value which he has received from him

-23-

1  under the contract or offer to restore the same upon condition that the other party do
   likewise, unless the latter is unable or positively refuses to do so.

2

3  When notice of rescission has not otherwise been given or an offer to restore the
   benefits received under the contract has not otherwise been made, the service of a
   pleading in an action or proceeding that seeks relief based on rescission shall be
4  deemed to be such notice or offer or both.

5  Cal. Civ. Code § 1691 (West).  In this case, even if rescission was available as a remedy for

6  Defendants, in order to effectuate the rescission Defendants must give notice of the rescission and

7  restore to U.S. Bank everything of value that Defendants received under the contract.  In this case,

8  U.S. Bank wired funds in the amount of $1,313,200.00 to Nations Title for the benefit of the buyer,

9  only upon the condition that an ALTA Title Policy be issued with the relevant Deed of Trust in a

10  First lien position.  In order to rescind, Defendants must return the $1,313,200.00 to U.S. Bank.

11  They have not done so and have not offered to do so.  Therefore, rescission is not available and the

12  U.S. Bank is entitled to judgment as a matter of law.

13       **5.**     **Even If There Was a Mistake, the Remedy of Rescission Is Not Available Because U.S. Bank Cannot Be Placed in the Status Quo.**

14

15       As with the above argument, rescission is not available to Defendants because U.S. Bank

16  cannot be placed in the status quo.  U.S. Bank recognizes that Nations Title did not receive the entire

17  benefit of the $1,313,200.0.0 that was wired to it for the benefit of the buyer in the Subject

18  Transaction.  Therefore, Defendants may argue that Section 1691 is only applicable to the extent of

19  the fee that Nations Title may have received for acting as the escrow agent plus any premium it

20  received for the ALTA Title Insurance Policy.  However, California law is also clear that rescission

21  is not available as a remedy unless the non-rescinding party an be placed in the status quo.  Indeed,

22  "rescission of contract may be had for a party's mistake of fact, if mistake is material to contract and

23  not result of neglect of legal duty, enforcement of contract as made would be unconscionable, and

24  other party thereto can be placed in status quo." *Brunzell Const. Co. v. G. J. Weisbrod, Inc.,* 134

25  Cal.App.2d 278, 284 (Cal. Ct. App. 1955).  In this case, U.S. Bank can only be placed in status quo

26  it if receives the $1,313,200.00, plus interest on those funds, which were wired to Nations Title to

27  hold as a fiduciary and to only disburse when compliance with the Lender's Instructions could be

28  completed.  Because Defendants have not offered to place U.S. Bank in status quo, rescission is not

1    an available defense to U.S. Bank's breach of contract claim and U.S. Bank is entitled to judgment

2    as a matter of law.

3    **V.     EVEN IF THERE WAS NO BREACH OF CONTRACT, DEFENDANTS ARE
         LIABLE FOR NEGLIGENCE.**

4

5           Even if the Court finds that Defendants are not liable for breach of contract, U.S. Bank moves

6    for summary judgment on the grounds that Defendants were negligent and caused damage to U.S.

7    Bank.  "Upon the escrow holder's breach of an instruction that it has contracted to perform or of an

8    implied promise arising out of the agreement with the buyer or seller, the injured party acquires a

9    cause of action for breach of contract.  Similarly, if the escrow holder acts negligently, 'it would

10   ordinarily be liable for any loss occasioned by its breach of duty.'" *Claussen v. First Am. Title Guar.*

11   *Co.*, 186 Cal. App. 3d 429, 435 (Cal. Ct. App. 1986) (citations omitted).  Indeed, "it is the duty of

12   the escrow holder to exercise ordinary skill and diligence in his employment and if he acts

13   negligently, he is liable for any loss proximately occasioned by such negligence.  *Kirk Corp. v. First*

14   *Am. Title Co.*, 220 Cal. App. 3d 785, 806 (Cal. Ct. App. 1990) (citations omitted).

15          A claim for negligence lies where the "defendant owed a legal duty, the defendant breached

16   that duty and the breach proximately caused injury to the plaintiff." *J.L. v. Children's Inst., Inc*., 177

17   Cal. App. 4th 388, 396 (Cal. Ct. App. 2009).  In this case, Defendants had a duty to comply with the

18   Lender's Instructions.  Nations Title failed to do so, U.S. Bank has been injured by this failure and

19   Nations Title is liable for negligence. *Zang v. Nw. Title Co.*, 135 Cal. App. 3d 159, 169, 185 Cal.

20   Rptr. 176, 182 (Cal. Ct. App. 1982) (escrow company held liable when it was shown to have been

21   the proximate cause of the loss that was caused by the escrow company.)  Moreover, Defendants

22   knew U.S. Bank intended that the Subject Transaction be secured by a first priority encumbrance

23   against the Subject Property.  Defendants breached the duty to comply with the Lender's Instructions

24   by failing to issue an ALTA policy showing the subject Deed of Trust as a first priority lien against

25   the Subject Property.   Additionally, Defendants were negligent in not noticing the "mistake"

26   regarding the June 16, 2008 Preliminary Report.  Upon receipt of the Lender's Instructions,

27   Defendants had all of the information necessary to see that the parties were utilizing different

28   Preliminary Reports when discussing the Subject Transaction.  Upon realizing this, Nations Title had

a duty to contact U.S. Bank to clarify the questionable instructions. *Claussen v. First Am. Title Guar. Co.*, 186 Cal. Appl 3d 429, 435 (Cal.Ct. App. 1986). Nations Title simply failed to do so and Defendants must now compensate U.S. Bank for the damage its failure has caused.

Finally, Nations Title failed to exercise even ordinary care in contacting U.S. Bank to determine whether U.S. Bank agreed to have the EPA Lien appear on the final title policy. This information was provided by Art Mazmanian and to confirm, Nations Title did not call U.S. Bank to discuss the issue. Instead, an employee of Nations Title sent a vague e-mail to Lisa Long, who was not even the manager who signed the Lender's Instruction. (UMF Nos. 64-69.) That vague e-mail did not mention an EPA Lien, did not mention the May Preliminary Report and did not mention the fact that showing the EPA Lien on the final title policy would result in a lien that was not a first priority lien. (Id.) Nations Title had a duty to exercise care in communicating with U.S. Bank and it should have been more careful in clearly identifying the information to which it was referring in that e-mail. Nations Title did not do so and its failure is the cause of U.S. Bank's damages. In sum, the undisputed facts demonstrate that Defendants were negligent and U.S. Bank is entitled to judgment as a matter of law.

**V.**

**CONCLUSION**

For all the reasons discussed above, U.S. Bank respectfully requests that the Court grant its motion for partial summary judgment of its breach of contract and negligence causes of action against Defendants Nations Title Company of California and TransUnion Title Insurance Company.

Dated:  February 7, 2011              PITE DUNCAN, LLP


                                      */s/ Laurel I. Handley*
                                      LAUREL I. HANDLEY
                                      Attorneys for Plaintiff in Intervention
                                      U.S. Bank, National Association

**CERTIFICATE OF SERVICE**

I, the undersigned, declare: I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action. My business address is 4375 Jutland Drive, Suite 200, P.O. Box 17935, San Diego, CA 92177-0935.

I hereby certify that on February 7, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Davis H Forsythe<br>William A Weinischke<br>United States Department of Justice<br>PO Box 7611<br>Washington, DC 20044-7611<br>Email: davis.forsythe@usdoj.gov<br>Email: bill.weinischke@usdoj.gov<br>*Attorneys for Plaintiff* | Mark L Kiefer<br>Ericksen Arbuthnot<br>835 Wilshire Boulevard, Suite 500<br>Los Angeles, CA 90017-2603<br>Email: mkiefer@ericksenarbuthnot.com<br>*Attorney for Nations Title Company of*<br>*California* |
| Eric M Schiffer<br>Leslie F Vandale<br>Schiffer & Buus APC<br>4675 MacArthur Court, Suite 590<br>Newport Beach, CA 92660<br>Email: eschiffer@schifferbuus.com<br>Email: lvandale@schifferbuus.com<br>*Attorneys for Transunion Title Insurance*<br>*Company* | Jilbert Tahmazian<br>Jilbert Tahmazian Law Offices<br>1518 West Glenoaks Boulevard<br>Glendale, CA 91201<br>Email: jilbert@jilbertlaw.com<br>Attorney for 718 West Wilson Avenue<br>Glendale, California 91203, *Hovsep*<br>*Boghossian and Hovsep Derboghossian* |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of February 2011, at San Diego, California.

MARSHA L. JOHNSON

2305340.wpd