1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| The United States of America, | ) | Case No. 2:09-cv-06487-JHN-VBKx |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **ORDER GRANTING THE UNITED STATES' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT [91]** |
| 718 West Wilson Avenue, Glendale, California, 91203, Lot 17 of Tract No. 4531, in the county of Los Angeles, California, as per map recored at Book 52, page 18 of Parcel Maps, Office of the County Recorder, and Hovsep Boghossian, | ) ) ) ) ) ) ) | Judge: Honorable Jacqueline H. Nguyen |
| Defendants. | ) ) ) | |

Before the Court is Plaintiff United States of America's ("United States")
Motion for Partial Summary Adjudication of two narrow issues: (1) the amount it
may recover under the Comprehensive Environmental Response, Compensation,
and Liability Act ("CERCLA") and (2) the deficiency of Defendant Hovsep
Boghossian's ("Boghossian") response to CERCLA section 104(e) Information
Request.  (Docket No. 91.)  The Court has considered the Motion, Opposition,
and Reply briefs, and oral arguments at the hearing on March 28, 2010.  For the
reasons discussed below, the motion is GRANTED.

# I.  FACTUAL BACKGROUND

The underlying *in rem* action stems from the United States' removal of hazardous substances from a property.  The following facts are not in dispute.  (*See* Order re United States' Mot. for Partial Summ. J. at 2-3, dated 11/30/10 (hereinafter, "11/30/10 Order"); Docket No. 70.)  The defendants in the underlying Complaint filed by the United States are (1) the subject property ("Property"), 718 West Wilson Avenue, Glendale, California, 91203, and (2) Boghossian, the Property's current owner.  (Docket No. 1.)  The Property is located within the San Fernando Valley Area 2 Superfund Site.  In the past, the Drilube Company operated on the Property, using numerous chemicals in an aerospace-related operation.  Soil on the Property and groundwater beneath the Property are now contaminated with chemicals.

The U.S. Environmental Protection Agency ("EPA") began conducting response activities at the Property in March 2007, and in April 2010 EPA completed a removal action involving contaminated soil.  EPA also will likely conduct future removal or treatment actions on the Property.  EPA's response costs as of May 31, 2010, are largely unreimbursed.

In 2004, Remy Mazmanian purchased the property.  During the time Remy Mazmanian owned the Property, EPA obtained a lien on the Property pursuant to CERCLA section 107(l), 42 U.S.C. § 9607(l), recording notice of the lien in the Los Angeles County Recorder's Office on March 7, 2008.  Despite the existence of the EPA lien, Boghossian purchased the Property on June 25, 2008.  (11/30/10 Order at 7.)

# II.  PROCEDURAL HISTORY

On September 3, 2009, the United States commenced the underlying action to seek reimbursement for the costs the EPA incurred in connection with the cleanup.  (Docket No. 1.)  On January 28, 2010, the Court granted a motion to intervene brought by United States Bank, National Association ("U.S. Bank"),

allowing U.S. Bank to intervene as Plaintiff-in-Intervention against Defendants-in-Intervention Boghossian (*also known as* Hovsep Derboghossian), Remy Mazmanian, Nations Title Company of California, Regency Estate Properties, Inc., and Transunion Title Insurance Company.  (Docket No. 12, 14.)

Thereafter, the Court granted the United States' Motion to Trifurcate, trifurcating the case into separate phases for (1) the determination of liability, (2) the determination of costs to be paid by liable parties, and (3) the determination of remaining issues brought by U.S. Bank.  (Docket No. 52.)

On November 30, 2010, the Court granted in part and denied in part the United States' Motion for Partial Summary Judgment.  (Docket No. 70.)  The Court held the Property liable *in rem* pursuant to CERCLA section 107(l), 42 U.S.C. § 9607(l), for response costs not inconsistent with the National Contingency Plan ("NCP").[1]  (11/30/10 Order at 5.)  Further, the Court found "Boghossian liable as an 'owner and operator' of the Property" pursuant to CERCLA 107(a), 42 U.S.C. § 9607(a), for response costs not inconsistent with the NCP, both costs already incurred and future costs.  (*Id.* at 7-8.)

The United States is now before the Court on its second motion for partial summary judgment.  (Docket No. 91.)  This time, the United States seeks summary adjudication of the amount it is entitled to recover relating to costs it incurred in connection with the Property.  In particular, the United States seeks to recover response costs of at least $1,392,734.14 as of September 30, 2010.[2]  (Mot. at 1.)  Furthermore, it also seeks summary adjudication as to the tardiness and

---

[1]  The NCP is described at 42 U.S.C. § 9605 and is set forth at 40 C.F.R. Part 300, *et seq.*  That plan sets forth "procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants. . . ."  42 U.S.C. § 9605(a).

[2]  The United States is only seeking costs associated with the Property, rather than all costs associated with the San Fernando Valley Area 2 Superfund Site, as requested in the Complaint.  (Mot. at 1 n.1.)

1   insufficiency of Boghossian's response to the EPA's request for information

2   under section 104(e) of CERCLA, 42 U.S.C. 9604(e) ("Information Request").

3      Defendants' opposition briefs were due on February 14, 2011. (Reply at 2;

4   Docket No. 123.)  Defendant Boghossian filed an opposition on February 18,

5   2011 without offering any excuse for his belated response.[3]  Defendant Property

6   failed to file any response at all. Pursuant to Local Rule 7-12, the Court need not

7   consider Boghossian's opposition.  However, even if the Court were to consider

8   it, as it did, the Court finds that the United States is entitled to summary

9   adjudication of the two issues as a matter of law.

## III.  LEGAL STANDARD

11      Summary judgment is appropriate if there is no genuine issue of material

12   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

13   P. 56(a).  The moving party bears the initial responsibility of informing the court

14   of the basis of its motion, and identifying those portions of "'pleadings,

15   depositions, answers to interrogatories, and admissions on file, together with the

16   affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

17   material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.

18   R. Civ. P. 56(c)). The substantive law governing a claim determines whether a

19   fact is material. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

20   630 (9th Cir. 1987); *see also Long v. County of Los Angeles*, 442 F.3d 1178, 1185

21   (9th Cir. 2006) ("Material facts are those which may affect the outcome of the

22   case.") (internal citations omitted).

23      In judging evidence at the summary judgment stage, the Court does not

24   make credibility determinations or weigh conflicting evidence and draws all

25   reasonable inferences in the light most favorable to the nonmoving party.  *T.W.*

---

[3]   The Court notes that this is the second time Boghossian has filed a late opposition. (*See* 11/30/10 Order at 3.)

*Elec. Serv.*, 809 F.2d at 630-31; *see also Brookside Ass'ns v. Rifkin*, 49 F.3d 490, 492-93 (9th Cir. 1995).  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(c)(2).

## IV.  DISCUSSION

**A.     The United States Is Entitled to Recover its Response Costs from Defendants.**

The costs incurred by the United States and documented in the EPA Cost Summary and the Declaration of William Kime are the types of costs recoverable under CERCLA.  Section 9607(a) of CERCLA makes responsible parties liable for "*all* costs of removal or remedial action incurred by the United States Government . . . ."  42 U.S.C. § 9607(a)(4) (emphasis added.)  "Essentially, Congress has authorized the government to utilize Superfund money to take direct response actions that are consistent with the NCP and to recover all response costs from all persons responsible for the release of a hazardous substance.  42 U.S.C. § 9607(a).  The recovered funds are used to replenish the Superfund." *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1500 (6th Cir. 1989).  The broad remedial purpose of CERCLA supports a liberal interpretation of the term "all costs."  *See United States v. Chapman*, 146 F.3d 1166, 1175 (9th Cir. 1998) ("CERCLA is remedial legislation that should be construed liberally to carry out its purpose"); *Meyer*, 889 F.2d at 1503 (finding that the broad remedial purpose of CERCLA supports a liberal interpretation of recoverable costs).

Courts have found that recoverable response costs include:

(1) ***direct costs*** such as those incurred assessing, investigating, monitoring, testing and evaluating contamination at a site, as well as costs of designing and implementing a response action (*see* 42 U.S.C. §9601(23); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 (2d Cir. 1985) (finding that the state's costs in assessing the conditions of the site and supervising the removal of the drums of

1    hazardous waste squarely fall within CERCLA's definition of response costs);

2    *Meyer*, 889 F.2d at 1502-04);

3          (2) **indirect costs** such as overhead costs in administering the program and

4    litigating Superfund enforcement actions (*see Meyer*, 889 F.2d at 1503; *United*

5    *States v. Ottati & Goss*, 900 F.2d 429, 444 (1st Cir. 1990) (stating that "ordinarily

6    courts should allow recovery of [] indirect costs");  *California v. Neville Chem.*

7    *Co.*, 213 F. Supp. 2d 1115, 1124 (C.D. Cal. 2002) (stating that recoverable

8    response costs also include indirect costs or overhead));

9          (3) **litigation costs**, including reasonable fees, administrative costs and

10   investigative costs related to the response action (*see* 42 U.S.C. § 9601(25);

11   *Chapman*, 146 F.1175 (concluding that the government, as the prevailing party,

12   may recover attorney fees attributable to the litigation as part of its response

13   costs); *United States v. Gurley*, 43 F.3d 1188, 1199-1200 (8th Cir. 1994) (DOJ

14   attorneys fees and litigation expenses recoverable));

15         (4) **interest on the recoverable costs incurred** (*see* 42 U.S.C. § 9607(a)(4),

16   *Meyer*, 889 F.2d at 1505).

17         The costs the United States seeks to recover fall within the categories of

18   recoverable costs described above.  In particular, the costs at issue fit within the

19   following categories: (1) EPA payroll expenses and travel expenses incurred in

20   conducting response actions in connection with the Property and in seeking to

21   recover from the Defendants; (2) EPA contractor expenses for work conducted in

22   connection with the Property; (3) EPA indirect/oversight costs; and (4) DOJ

23   enforcement costs.  Boghossian's opposition does not dispute that the United

24   States is entitled to recover these costs as a matter of law.  Indeed, Boghossian's

25   brief completely failed to address this issue.  Accordingly, the Court concludes

26   that there is no dispute that as a matter of law, the costs incurred by the United

27   States are of the type recoverable under CERCLA.

28

1    The United States seeks to recover its response costs in connection with this

2  Property in the sum of $1,392,734.14.  (Fong Decl. ¶ 47.)  These costs are

3  summarized in the Kime Declaration, Pennington Declaration, and Exhibit I to the

4  Fong Declaration.  Ms. Fong and Mr. Pennington of the EPA submit that they

5  personally reviewed the underlying cost records and documentation, and

6  reconciled the EPA Cost Summary against those documents to confirm its

7  accuracy.  (*See* Fong Decl. & Pennington Decl., *generally.*)  Courts have held that

8  affidavits and cost summaries submitted by the United States in support of its

9  motions for summary judgment on the issue of cost recovery under CERCLA are

10  admissible and sufficient to establish the amount of these costs.  *See e.g., United*

11  *States v. Hardage*, 982 F.2d 1436, 1442-1443 (10th Cir. 1992) (finding affidavits

12  of various EPA and DOJ employees charged with accumulating the cost data and

13  cost summaries established a prima facie case that the government is entitled to

14  the claimed response costs); *United States v. Chromalloy Am. Corp.*, 158 F.3d

15  345, 352 (5th Cir. 1998) (observing that courts have found detailed cost

16  summaries sufficient to establish a prima facie case that the government is entitled

17  to its response costs); *United States v. Findett Corp.*, 220 F.3d 842, 849 (8th Cir.

18  2000) (admitting detailed cost summaries, supporting data, and other competent

19  evidence to support its claim for recovery of response costs).  Based on the

20  declarations and costs summaries submitted by the United States, the Court finds

21  that government is entitled to recover the claimed amount.

22    Boghossian does not dispute that all costs set forth in the EPA Cost

23  Summary are supported by documentation maintained by the EPA.  (Boghossian's

24  Resp. to Pl.'s Statement of Genuine Issues ("SUF"), ¶ 5.)  However, Boghossian

25  argues that Plaintiff has not presented evidence that the costs are directly

26  attributable to him or his activities.  (*Id.* ¶¶ 7-10, 12-14.)  Boghossian's argument

27  does not create a genuine dispute with regard to this issue.  Boghossian, in

28  essence, attempts to re-litigate his CERCLA liability.  In his opposition,

1   Boghossian, for the second time, contends that others caused and contributed to
2   the contamination and they are the ones responsible in whole or in part for the
3   damages.  (Opp'n at 4-5.)  That is not the issue in the current motion, and in fact,
4   the Court has already ruled on this particular issue in a previous order.  (*See*
5   11/30/10 Order at 6-7.)  The Court found Boghossian liable as an owner, because
6   he was aware of the contamination at the time of his purchase, and he had
7   constructive notice of contamination because the United States recorded a lien on
8   the property.  (*Id.* at 7.)  To re-visit the issue of Boghossian's CERCLA liability
9   again at this juncture is not only improper, but does nothing to create a triable
10  issue that will preclude summary adjudication of the total cost the United States is
11  entitled to recover as a matter of law.

12       Once the government has established its prima facie case under CERCLA §
13  107(a), the burden shifts  to the defendants to create a genuine issue of material
14  fact on the question whether the EPA's response action was inconsistent with the
15  NCP.  *Chapman*, 146 F.3d at 1170.  In the instant case, Boghossian failed to do so
16  and his papers did not even address this issue.  Based on the foregoing, the Court
17  concludes that there is no triable issue that the EPA has incurred unreimbursed
18  costs of $1,392,734.14 in connection with its response costs relating to the
19  Property and the United States is entitled to recover this amount.       In addition,
20  the Court finds that Defendants are jointly and severally liable.  "Once liability is
21  established, the defendant may avoid joint and several liability by establishing that
22  it caused only a divisible portion of the harm."  *Carson Harbor Vil., LED v*
23  *Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001).  Defendants make no such
24  showing here, and they are thus jointly and severally liable for the entire amount
25  of costs incurred in connection with the Property.[4]

26

27       [4] n the prior Motion for Summary Adjudication, the United States sought
28  recovery for the *entire* site, not just the Property at issue.  Therefore, the Court

1   **B.      Boghossian's Response to EPA Information Request Was Late and**
2   **Otherwise Inadequate as a Matter of Law.**

3   The United States moves for an order summarily adjudicating the timeliness
4   and sufficiency of Boghossian's response to the United States' CERCLA section
5   104(e) Information Request.  Moreover, in view of Boghossian's alleged late and
6   deficient response, the United States asks for penalties to be assessed against him
7   in the amount of $37,500.  (Mot. at 16.)

8   The following facts are not in dispute.  (*See* Boghossian's Resp. to Pl.'s
9   SUF, ¶ 15-19.)  On November 18, 2008, Boghossian received the Information
10  Request, notifying him of his potential CERCLA liability, requesting information
11  from him, and requiring him to respond **within forty-five (45) days of receipt of**
12  **the letter.**  (Taylor Decl. ¶ 6.)  The Information Request noted that compliance
13  with the its terms was mandatory and failure to comply might result in
14  enforcement action and imposition of civil penalties.  (*Id.*)

15  Thereafter, on February 26, 2009, the EPA sent him a letter ("the Failure to
16  Comply Letter"), informing him that his response to the Information Request was
17  overdue and reminding him that his exposure to liability for civil penalties would
18  grow with each day of continued noncompliance.  (*Id.* ¶ 7.)  Boghossian received
19  the Failure to Comply Letter on March 23, 2009.  (*Id.*)

20  On April 9, 2009, ninety-four (94) days after the response period provided
21  by EPA had elapsed, Boghossian provided the EPA with a response.  (*Id.* ¶ 8.)
22  His 104(e) Response consisted of a single page of answers, and was not
23  accompanied by documents or other evidentiary submissions.  (*Id.* ¶¶ 8-9.)
24  Boghossian did not supplement his 104(e) Response with additional submissions
25  of answers or documents.  (*Id.* ¶ 9.)  The United States offered Defendants access

26
27  ───────────────
28  reserved ruling on the issue of apportionment.  (11/30/10 Order 7–8.)  The instant
    Motion limits recovery to only the Property at issue.

to the underlying documents supporting its response activities and costs incurred

in connection with the Property.  (Weinischke Decl. ¶¶ 6-7.)  Defendants never

sought to make any arrangement to review or inspect these documents relating to

the EPA's response costs.  (*Id.* ¶ 7.)

Unreasonable failure to comply with an EPA information request warrants

judicial imposition of a civil penalty not to exceed $32,500 per day for violations

between March 15, 2004 and January 12, 2009, and $37,500 per day for violations

occurring after January 12, 2009.  42 U.S.C. § 9604(e)(5)(B); 73 Fed. Reg. 75340,

75345 (December 11, 2008) (regulations adjusting statutory penalties for

inflation).

In assessing penalties for unreasonable failure to comply with an

information request, "[c]ourts have identified the following factors as bearing on

the amount of a penalty: (1) the good or bad faith of the defendant, (2) the injury

to the public, (3) the defendant's ability to pay, (4) the desire to eliminate the

benefits derived by a violation, and (5) the necessity of vindicating the authority

of the enforcing party." *Gurley*, 384 F.3d at 325 (quoting *Taylor*, 8 F.3d at 1078).

In view of these factors, the United States seeks a penalty of $37,500, which is

equivalent to the maximum penalty for a single day of violation, but sufficient to

send the message that potentially responsible parties must take EPA's information

requests seriously.  (Mot. at 16.)

As previously stated, Boghossian does not dispute the underlying facts

supporting the request for penalty.  (*See* Boghossian's Resp. to Pl.'s SUF, ¶ 15-

19.)  Nor does he dispute the amount of penalty.  (*See* Opp'n, *generally*.)  In fact,

he completely failed to address the request for penalty.  Based on the foregoing,

the Court finds that Boghossian's response was late, was insufficient, and failed to

comply with the Information Request.  There is also not dispute that a penalty of

$37,500 is sufficient to serve the purposes of the CERCLA penalty provision.

## V.  CONCLUSION

For these reasons, summary adjudication of the two issues are GRANTED. The United States is ordered to prepare and submit a proposed Judgment.

**IT IS SO ORDERED.**

Dated: April 11, 2011

_____
Honorable Jacqueline H. Nguyen
UNITED STATES DISTRICT COURT